**Gilmore ASITONIA, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1565.**

Supreme Court of Alaska.

April 13, 1973.

---

1. Crim.R. 47(b); *see* Bakken v. State, 489 P.2d 120, 128–129 (Alaska 1971) (dissenting opinion), for a definition of plain error.

2. Crim.R. 47(a).

Herbert D. Soll, Public Defender, Anchorage, Bryan P. Timbers, Asst. Public Defender, Nome, for appellant.

John E. Havelock, Atty. Gen., Juneau, William W. Garrison, Dist. Atty., Nome, for appellee.

Before: RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

OPINION

ERWIN, Justice.

This is an appeal from a sentence of 20 years imprisonment resulting from a conviction of second degree murder.

On October 13, 1971, at approximately 6:00 p.m., the defendant, Gilmore Asitonia, having sent his children upstairs, took a loaded .22 rifle and waited for his wife to return from work. As his wife got out of the car in front of the house, the defendant shot her in the neck. He then left the house, walked to where his wife was lying and shot her twice in the head.

Appellant was indicted for first degree murder, and plead guilty to second degree murder. The court, after considering the evidence presented at trial, the testimony of Dr. J. Ray Langdon, the report of psychiatric examination from Langdon Clinic, the pre-sentence report, defendant's "rapsheet", and recommendations from the District Attorney, defense counsel, and the

probation officer, sentenced the defendant to 20 years imprisonment.

▰▰▰ The scope of appellate review of sentences requires that this court make its own examination of the record, and it will modify the sentence only if it is convinced that the sentencing court was "clearly mistaken" in imposing the sanction it did.[1] This court has a duty to review for excessiveness or leniency of the sentence, in light of the nature of the crime, the defendant's character, and the need for protecting the public. It is also obliged to consider the manner in which the sentence was imposed, including the sufficiency and accuracy of the information upon which it was based.[2] Such an independent examination of the justice of a particular sentence is necessary in order for the review process to function properly.[3] The objectives of sentence review are articulated in the following language:

(i) to correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;

(ii) to facilitate the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding his sentence;

(iii) to promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; and

(iv) to promote the development and application of criteria for sentencing which are both rational and just. State v. Chaney, *supra* at 443 (citation omitted).

Article I, Section 12, of the Alaska Constitution provides in part: "Penal administration shall be based on the principle of reformation and upon the need for protecting the public". In implementing this provision, the court has recognized the following goals of criminal sanctions: 1. Rehabilitation of the convicted offender into a non-criminal member of society. 2. Isolation of the offender from society to prevent criminal conduct during the period of confinement. 3. Deterrent of other members of the community who might have tendencies toward criminal conduct similar to those of the offender. 4. Deterrent of the offender himself after release. 5. Community condemnation or reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves.[4]

With the above criteria in mind we can proceed to evaluate the sentencing process in the instant case. The defendant raises basically two objections to the sentencing process below, either of which, if valid, is

---

1. Waters v. State, 483 P.2d 199, 200 (Alaska 1971); Nicholas v. State, 477 P.2d 447, 448 (Alaska 1970); State v. Chaney, 477 P.2d 441, 444 (Alaska 1970).

2. State v. Chaney, 477 P.2d 441, 443 (Alaska 1970).

3. The standards of review are set forth as follows:
   [T]he standard of review * * * requires of necessity a broad view, for it is not the purpose of appellate review to enforce uniformity or to chill initiative on the part of the trial judge in attempting to arrive at a proper sentence. Nicholas v. State, 477 P.2d 447, 448–49 (Alaska 1970).
   and

Sentence review by [the supreme] court must be carried out with a view to effectuate the purposes of the [sentence appeal] act, as well as the goals of sentence review in general. State v. Chaney, 477 P.2d 441, 443 (Alaska 1970).

4. State v. Chaney, 477 P.2d 441, 443 (Alaska 1970); *see also* Nicholas v. State, 477 P.2d 447, 448 (Alaska 1970). "To make a reasoned sentence decision, the sentencing judge must determine the priority and relationship of these objectives in any particular case." *Id.*

sufficient to raise grave doubts regarding it:

The appellant's initial contention is that the court placed too much emphasis on the nature of the offense in sentencing the defendant and ignored other relevant sentencing criteria. A review of the record indicates that the court below considered a great many other criteria than the crime itself in sentencing the defendant. From the transcript it is clear that the court considered (1) the nature and seriousness of the crime, (2) the need to rehabilitate Asitonia, (3) the need to protect society through isolating him, (4) the deterrent effect of the sentence both on Asitonia and others in the community, and (5) the effect of the sentence as a reaffirmation of societal norms.

■ Each of these are valid criteria and the consideration of all of them shows a heightened sense of responsibility on the part of the superior court judge. It is the judge who must determine the priority and relationship of these objectives in any particular case.[5]

Appellant also alleges that the court did not properly evaluate the information before it concerning the defendant's alcoholism and his need for training and supervision in financial affairs. With regard to the latter, it is difficult to fault the court below, for, while it may be true that the defendant "compiled a rather remarkable employment record", the record is replete with evidence of fiscal irresponsibility—not

the least of which is his admission that he had *no* assets and was in debt for $1,700.-00.

■ The major contention of the defendant, however, concerns the court's handling of the testimony of Dr. Langdon concerning the defendant's alcoholism. The defendant claims that the court imposed this sentence upon him simply to cure him of a drinking problem which it had exaggerated all out of proportion. If this were the case, the appropriateness of the sentence would be seriously in doubt. It is not the case, however. What the court *did* find was that the defendant over the years had developed a pattern whereby to relieve building anxieties he would resort to heavy drinking.[6] The defendant's drinking has often resulted in "blackouts" where "he does not remember what happened." During one of these blackouts he purposely and maliciously murdered his wife. This pattern indicated to the court below that the defendant was "not exactly a safe person." This does not seem to be an unreasonable inference. The court, while accepting Dr. Langdon's testimony that as a result of the death of his wife the source of the defendant's anxieties is no longer present and that they would not build up as fast, felt that there "are and could be other instances of anxiety." This too seems reasonable as does the court's conclusion that:

[t]he defendant is a danger to society, especially when he consumes excessive amounts of alcohol. He needs to be iso-

---

5. *Id. Accord* State v. Chaney, 477 P.2d 441, 444 n. 16 (Alaska 1970).

6. *Dr. Langdon:* . . . And when confronted with with such [stress] circumstances it's likely that his response will consist of some action aimed at reducing that stress.
   *The Court:* That last part is what I wanted you to explain. What is he likely to do when he gets under stress to relieve the stress.
   *Dr. Langdon:* Well, we . . . .. Because of this nature, this pattern of his drinking, it would appear that as

stress has built up over the years he tends to use alcohol to reduce the anxiety and when it goes down he stops drinking for awhile.

. . . . .

*The Court:* Now, let me ask you: if the defendant is let out of jail is he likely to continue his drinking?
*Dr. Langdon:* I think he's less apt to continue that pattern without the stresses of the marriage then [sic] he was before. *Other than that it might still be a pattern which he would revert to of course.* (emphasis added).

lated from the community until rehabilitated.

■ Taking the "broad view" of the offense, the offender, and the community, it is clear that the sentencing judge properly evaluated his role in the sentencing process in a difficult case. This especially is true when it is remembered that the judge did not set any mandatory time to be served but rather left it to the expertise of the parole board to determine after careful supervision and examination when the defendant has been successfully rehabilitated and can be released to society at large.[7]

The sentence is affirmed.

FITZGERALD, J., not participating.

7. Appellant has mentioned additional grounds for challenge to the sentence which we have considered but find no merit in.