**Marilyn Dorothy SMITH, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 2155.**

Supreme Court of Alaska.

Feb. 24, 1975.

---

34. 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

35. 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319, 321 (1920).

James K. Tallman, Anchorage, for appellant.

Robert B. Downes, Asst. Dist. Atty., Catherine Chandler, Dist. Atty., Fairbanks, John E. Havelock, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER, and FITZGERALD, JJ.

## OPINION

CONNOR, Justice.

This is a sentence appeal. Appellant appeals from a superior court judgment and commitment on the grounds that the sentence imposed was excessive, and that it was a cruel and unusual punishment. She also appeals from the denial of a motion to vacate or suspend this sentence on the grounds that it was a cruel and unusual punishment and was an excessive sentence.

The appeal raises two principle questions: (1) whether we have jurisdiction to review a sentence where the trial judge provided for a review of the sentence within six months and this review never took place; and (2) whether a ten-year sentence is excessive for this first offender on a charge of burning dried trees and tree branches.

By an informatic̱ dated July 19, 1972, appellant was charged with malicious or wanton setting of fires under AS 41.15.-150.[1] The information alleged that appellant unlawfully and maliciously set on fire "dried downed trees and tree branches" on

---

1. AS 41.15.150 provides:
   "A person who maliciously or wantonly sets on fire timber, brush, grass or other inflammable material located or growing on lands that are not owned, possessed or controlled by him is guilty of a felony and upon conviction is punishable by a fine of not less than $100 or not more than $1,000, or by imprisonment for not less than one year nor more than 10 years, or by both."

the side of a private driveway, owned by another person, on July 30, 1972. Appellant pleaded not guilty.

A trial by the court without a jury was begun on August 7, 1972, but after the first morning of testimony, counsel for appellant stated that she wished to change her not guilty plea to a guilty plea. The court inquired whether appellant understood the consequences of a guilty plea, and her counsel answered that she did. Appellant herself confirmed that she wished to change her plea.

Based upon a stipulation by both parties, the court ordered that appellant undergo a psychiatric evaluation at Alaska Psychiatric Institute.

Sentencing took place on January 3, 1973, after this psychiatric evaluation was completed. The court, after discussion of the predisposition report by Mrs. Fenton of the Division of Corrections and the psychiatric report by Dr. Rollins of the Alaska Psychiatric Institute, ordered that appellant be committed to the Commissioner of Health and Social Services for a period of ten years. A strong recommendation was made that efforts be directed toward placing appellant "in a structured environment where [she] can receive psychiatric or psychotherapeutic care", and that she be "subject to parole at the discretion of the parole board if suitable counseling can be arranged." The court also ordered that the case be reviewed within six months. Appellant was advised by the court of her right to appeal the sentence within ten days.

There is no indication in the record that a review of appellant's sentence was held within six months. On November 9, 1973, appellant moved to vacate or suspend the sentence she received on the grounds that that sentence violated the United States and Alaska Constitutions because it was a cruel and unusual punishment, and because the sentence exceeded the maximum authorized by law. This motion was denied on January 18, 1974, and this appeal was filed on January 30, 1974.

■ Appellee asserts that we have no jurisdiction because appellant did not file a timely appeal.[2] The peculiar facts of this case have led us to the conclusion that we should relax the ordinary rules in order to prevent a manifest injustice.[3]

As part of the sentence, the superior court ordered that "this cause be reviewed in six (6) months." This order to review the sentencing was clearly an attempt to insure that some psychiatric therapy be given to appellant. The court indicated that it did not feel that a jail term would be helpful to appellant. It discussed a number of placement possibilities but said it could not order placement in a specific psychiatric facility. Instead, the court made a strong recommendation that appellant be placed "in a structured environment where [she] can receive psychiatric or psychotherapeutic care", and that she be "subject to parole at the discretion of the parole board if suitable counseling can be arranged."

Appellant has apparently remained in jail, and states in an affidavit of November 8, 1973, that until that time the only therapy she had received was her participation in meetings sponsored by Alcoholics Anonymous on Wednesdays. There is no indication from the record that a review of her sentence ever took place.

At the time of sentencing, the court itself expressed doubt as to whether it had authority to review the sentence at a later date.

"I would like to know—and I'm going to retain—if sentence is going to have any

---

2. At the time of sentencing in this case Supreme Court Rule 19(b) required that sentence appeals be filed within ten days after the entry of judgment. Criminal Rule 32.2(b) now provides for a 30-day period within which to appeal a sentence.

3. Criminal Rule 53 provides:
"These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice."

meaning at all, it's going to require that efforts be made to implement the sentence that is imposed by the court. I'm going to ask for a review of this matter and I know it's not provided for by statute or any other way. But I think that if the sentence is going to mean anything, I've got to have this power. I don't, well, I'm sure somebody will correct me. But I'm going to ask for a review in 6 months."

It is quite possible that appellant failed to appeal promptly because she expected that her sentence would be reviewed in six months. We believe that it would be unjust to deny this appeal when the failure to seek prompt review may have been induced by the actions of the trial court itself. We will, therefore, consider the appeal.[4]

■ In reviewing a sentence, we will examine the record and modify the sentence if we are convinced that the trial judge was clearly mistaken. Galaktionoff v. State, 486 P.2d 919, 922 (Alaska 1971). As we said in Nicholas v. State, 477 P.2d 447, 448–9 (Alaska 1970):

" . . . It is not the purpose of appellate review to enforce uniformity or to chill initiative on the part of the trial judge . . . . [T]here is a possibility of harm from the very act of review itself in that all judges may attempt to arrive at a happy medium rather than attempting through the personal initiative, experience and training peculiar to trial judges to formulate a program best suited to the individual in view of his background and the nature of the crime.

This court recognizes that the primary responsibility for sentencing must remain with the trial judge. The objectives of sentence review will be achieved only if the sentence that is initially fixed is based on the conscientious effort of the trial judge to arrive at the sentence which best suits the case at hand.

But respect for the discretion of the trial judge will not prevent this court from making our own examination of the record and we will modify the sentence if we are convinced that the sentencing court was clearly mistaken in imposing the sanction it did." [Footnotes omitted.]

See also State v. Chaney, 477 P.2d 441 (Alaska 1970).

■ In the case at bar, the maximum sentence of ten years was imposed on a first offender for setting dried, downed trees and branches on fire. The maximum sentence for a crime should generally be imposed only on the worst type of offenders.

"In sentencing, it should be remembered that the maximum sentence for a particular offense expresses a legislative judgment about how the worst offender within a class designated by the legislature should be treated." Waters v. State, 483 P.2d 199, 201 (Alaska 1971).

"In general, maximum sentences should not be imposed without some foundation for characterizing a defendant as the worst type of offender." Galaktionoff v. State, 486 P.2d 919, 924 (Alaska 1971).

Since maximum sentences are generally reserved only for the most hardened criminals, it is imperative to determine whether the defendant fits that description. In State v. Chaney, 477 P.2d 441, 443 (Alaska 1970), this court stated that " . . . the nature of the crime, the defendant's character, and the need for protecting the public" are germane factors in reviewing sentencing. Measured against these criteria, appellant can hardly be regarded as the "worst type of offender."

Appellant's crime.is that she set on fire some fallen trees and branches. According to the evidence presented before appellant changed her plea from not guilty to guilty,

---

4. Alaska's statutes and rules are silent as to whether a trial court can reserve jurisdiction and later review a sentence it has imposed within some definite period. We neither express nor intimate any opinion on the question.

the brush she set on fire had been pulled out of the woods and lighted in or next to a private driveway.

As for the appellant's character, she has no other criminal record. There were hints in the record that she might have been responsible for starting other fires, but references to accusations or arrests which did not lead to convictions are not proper considerations in sentencing. Both psychiatrists who examined appellant indicated that she was motivated by a mental disorder rather than criminality per se. The court itself expressed doubt as to whether it was dealing with a criminal member of society.

The interest in protecting the public appears to be the only basis on which the court felt justified in imposing the maximum sentence. Mrs. Fenton from the Division of Corrections, who recommended the ten-year sentence imposed by the court, said in reference to her recommendation: "[i]t was based merely for the protection of society. It had to be."

The trial court considered the goals of punishment listed in *Chaney* in its discussion of sentence review, and rejected each of them except for the protection of the public.

The only support in the record for the conclusion that a ten-year sentence is necessary in this case to protect the public are references in the predisposition report and one of the psychiatric reports which state that the prognosis for the mental disorder suffered by appellant is very poor.

Mrs. Fenton, a probation-parole officer, stated in her predisposition report: "Defendant is communicative, but unresponsive to counseling. She is unable and not ready to accept responsibility for the present offense which makes her a poor risk on probation."

Appellant was diagnosed by Dr. Rollins as having a "chronic brain syndrome", a "hysterical personality" and a "very strong sexual drive." He also indicated that she might have a drinking problem. He described her clinical type as follows:

"The clinical picture shown by an individual of this type is as follows: Superficial charm; an absence of delusions, may be somewhat paranoid, shows little anxiety. The individual is unreliable, often will convince others of his reliability, then repeat the act. He is unusually untruthful, but convinces others of his sincerity. So, he lies convincingly, shows a lack of remorse, or shame, about an act, often will brag about it. Often exhibits anti-social behavior, is inadequately motivated, lame excuses are offered for failure, judgment is poor, fails to learn by experience, often hedonistic, usually has a limited capacity to love others, shows a strong self-love. Often shows a general poverty in sharing major catastrophic situations involving others, has a specific loss of insight with little awareness of the trouble he causes others. Responds poorly in interpersonal relationships, shows little interest and does not want to get too involved, often will get drunk and act out. I believe Marilyn has the capacity to understand the proceedings against her and to assist in her own defense.

Suggested Disposition: I believe Marilyn is very dangerous to dry forests and to other people. I do not believe she has a treatable condition, where the taking of medication would effect a cure."

Certain evidence in the record points out that a more formal hearing on this issue might have been useful in this case. A report by Dr. Whelan, a psychiatric consultant from Fairbanks Medical & Surgical Clinic, offered a far more favorable prognosis of appellant's condition:

"I do not believe that this lady is a serious threat to herself or others; however, I do believe that she would benefit from further medical care for her emotional disturbance."

The court read the letter from Dr. Whelan at sentencing, but stated a preference for

■■■■■■■■■

the opinion of Dr. Rollins. A neurological report indicated that appellant had no brain damage.

Appellant's offense was clearly not the most serious type contemplated by the statute under which she was convicted. She apparently pulled the brush out of the woods before she set fire to it.

We are of the opinion that appellant's sentence should be revised to provide for imprisonment for the period of time she has served, but that she be placed upon probation thereafter. The period of probation and the terms of probation should be fixed by the superior court after holding an appropriate new sentencing proceeding.[5]

In imposing a new sentence, the superior court should obtain new psychiatric evaluations, should consider what probationary conditions will assure effective supervision and control of appellant's behavior, and should do whatever is possible to assure that appellant receives appropriate psychiatric and health care.

We reverse and remand the case to the superior court for a new sentence.

5. We were advised by counsel at oral argument that appellant was placed on parole after her appeal was taken.