**Marc A. BAILEY, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 2647.**

Supreme Court of Alaska.

April 12, 1976.

Paul L. Davis of Edgar Paul Boyko & Assoc., Anchorage, for appellant.

David Mannheimer, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

RABINOWITZ, Justice.

In this appeal we are asked to determine whether the superior court was "clearly mistaken" [1] in imposing a sentence of six years imprisonment with three years suspended. The trial court entered this sentence after appellant Marc A. Bailey, a 22-year old black, entered a plea of guilty to an information charging him with assault with a dangerous weapon.[2]

On the evening of February 12, 1975, in downtown Fairbanks, two groups of young men encountered each other at the French Quarter, a local bar. One of the groups consisted of whites, and the other of blacks. It is asserted by witnesses that the victim, James McFadden, made some unsavory comments about blacks. In response to these remarks, Bailey, seated at the next table among the blacks, drew a gun. At that point the groups separated, but trouble erupted a half an hour later at the Flame

1. Our standard of review on an appeal from sentencing is to determine whether the trial court's imposition of the sentence was clearly mistaken. *Bradley v. State*, 535 P.2d 1031, 1032 (Alaska 1975); *Smith v. State*, 531 P.2d 1273, 1276 (Alaska 1975); *Galaktionoff v. State*, 486 P.2d 919, 922 (Alaska 1971); *Nicholas v. State*, 477 P.2d 447, 449 (Alaska 1970); *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

2. Appellant was originally indicted for the crime of shooting with intent to kill. A sub-

sequently filed information charged Bailey with the crime of assault with a dangerous weapon, in violation of AS 11.15.220. This statute provides:

A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment in the penitentiary for not more than 10 years nor less than six months, or by imprisonment in jail for not more than one year nor less than one month, or by a fine of not more than $1,000 nor less than $100.

Lounge (another local bar), where the same individuals met again and subsequently a fight occurred. Although our record contains conflicting information as to whether the fight began on the premises of the Flame or shortly thereafter outside the bar, during this scuffle Bailey shot McFadden in the leg.

It is Bailey's contention that the probation officer "virtually ignored the rehabilitative aspects of the appellant's history in making the pre-sentence report," [3] which resulted in the sentencing court giving minimal consideration to the objective of rehabilitation in favor of those objectives of sentencing stressed by the probation officer.[4] Bailey further argues that since his past history indicates he would be an excellent candidate for a sentence not requiring institutionalization, the sentence meted out to him was clearly erroneous in light of the rehabilitation goal of sentencing.

Marc Bailey was born in Anchorage in 1953 and raised in both Anchorage and Fairbanks. His parents are presently divorced, his mother residing in Fairbanks and his father in Ohio. Since graduation from high school in Fairbanks, Bailey has held several jobs. A year after graduation appellant moved to Ohio where he resided with his aunt and uncle. On February 2, 1974, approximately three months after his arrival in the Youngstown, Ohio area, he was arrested along with his cousin and charged with the theft of a shotgun from a store display. Maintaining his innocence of the charge, Bailey claimed, according to the Ohio probation report, that he pled guilty in order ". . . to have his involvement in the [theft charge] over with, hoping to get probation and return to his home in Alaska." On August 15, 1975, Bailey was sentenced to one year's probation and was given permission to complete this probation in Alaska. He was thus on probation at the time of the instant offense. Upon returning to Alaska appellant married, and in February of 1975, he obtained employment with Green Construction Company, a subcontractor working on the Alaska Pipeline in the area of the Yukon River.

The probation report recommended Bailey receive a sentence of eight years with four years suspended. In meting out a six-year sentence with three years suspended, the superior court asserted that "[t]he recommendation, considering Marc Bailey's near-exemplary background, and it's not without its blemish, but that period of eight years, I believe, is . . . probably a little bit on the heavy side." The court's rationale for imposing the sentence it did is reflected in the following excerpts from its oral decision:

> The assault with a dangerous weapon . . . shooting another person, is a

---

3. The probation officer's report, which was filed in the superior court in June of 1975, took the format of a supplemental report to an extensive probation report prepared in late 1974 by an Ohio probation officer upon appellant's plea of guilty in Ohio to the crime of theft of a shotgun from a store. Bailey contends in part that the lack of personal contact between himself and the Alaska probation officer rendered the report insufficient and inaccurate.

4. We first articulated the considerations a sentencing judge must take into account in *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970), where we said (footnotes omitted):
    Under Alaska's Constitution, the principles of reformation and necessity of protecting the public constitute the touchstones

of penal administration. Multiple goals are encompassed within these broad constitutional standards. Within the ambit of this constitutional phraseology are found the objectives of rehabilitation of the offender into a noncriminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves.

serious offense under any circumstances. The court would note the prior conviction is a non-violent crime, and it appears that violence is not an accepted way of life of Mr. Bailey, that . . . this offense was committed while he was on probation, that violence was not a part of that first offense.

. . . Mr. Bailey . . . does not appear to me to have the ability to rehabilitate himself; the fact that he's currently employed and would be employable in the future. It appears to me that an accepted way of American life —it may be rather unfortunate—the use of force seems to be accepted. And . . . that same society is repelled by the excess of violence . . . that a lot of time violence is not necessarily warranted under the circumstances, and I don't find . . . that there was . . . justification to such an assault; . . . Mr. Bailey had a weapon and the court can only infer to the fact that he used it, that he intended to use it.

To reinforce the norms of society, and to impress upon society that offenses such as this will be punished and a sentence—a person will serve time for not abiding by the law.

One other comment, I think Mr. Bailey realizes now, that [he] would have been a far better person to have walked away from a confrontation, regardless of the fact that he might have felt that it was an affront or a slur upon his national background and origins, and I think . . . that he would have done that other person more to have shown him utter contempt, by turning around and walking away, rather than affording him the dignity of an assault, but that's behind us and all we have to do now is look to the future.

■ Our study of the presentence report and the sentencing proceedings leads us to conclude that appellant's assertions are without merit. Review of the court's stated reasons for imposing a sentence of six years with three years suspended indicates that the sentencing court considered the relevant sentencing criteria to which we alluded in *Chaney* and its progeny. Nothing in our prior sentencing decisions mandates that reformation or rehabilitation are to be accorded controlling weight by the sentencing judge in a given case. In *Asitonia v. State*, 508 P.2d 1023, 1026 (Alaska 1973), appellant advanced arguments similar to those presented in this appeal by Bailey. In *Asitonia* we stated (footnote omitted):

A review of the record indicates that the court below considered a great many other criteria than the crime itself in sentencing the defendant. . . . (1) the nature and seriousness of the crime, (2) the need to rehabilitate Asitonia, (3) the need to protect society through isolating him, (4) the deterrent effect of the sentence both on Asitonia and others in the community, and (5) the . . . reaffirmation of societal norms.

Each of these are valid criteria and the consideration of all of them shows a heightened sense of responsibility on the part of the superior court judge. It is the judge who must determine the priority and relationship of these objectives in any particular case.

■ In the case at bar we cannot say that the trial court's weighing and application of the *Chaney* criteria was clearly mistaken. Nor can we find any merit in appellant's arguments pertaining to the manner in which the presentence report was formulated, or to the contents of the presentence report itself. On the whole, we think the presentence report provided the sentencing court with balanced information and did not ignore Bailey's potential for rehabilitation. We further note that appellant has failed to demonstrate that any significant aspect of his life or of

the offense itself was overlooked in the presentence report.[5]

We therefore hold that the superior court was not clearly mistaken in imposing the sentence it did.[6]

Affirmed.

5. Inherent in our rejection of appellant's attack on the presentence report is our conclusion that the contents of the presentence report cannot be characterized as inaccurate. Nor can we find, in the particular circumstances of this case where the Alaska presentence report was functionally a supplemental report to a recent comprehensive Ohio presentence report, that extensive "personal contact" between the author of the Alaska report and the subject was required.

6. *See Thomas v. State*, 524 P.2d 664 (Alaska 1974); *Crow v. State*, 517 P.2d 756 (Alaska 1973); *Stevens v. State*, 514 P.2d 3 (Alaska 1973); *Nielsen v. State*, 492 P.2d 122 (Alaska 1971).