Jeanetta SZERATICS, Appellant,

v.

STATE of Alaska, Appellee.

No. 3390.

Supreme Court of Alaska.

Dec. 2, 1977.

Albert H. Branson, Jacobs, Branson & Guetschow, Anchorage, for appellant.

David Shimek, Asst. Dist. Atty., and Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

RABINOWITZ, Justice.

Jeanetta Szeratics appeals the excessiveness of the sentence she received from the superior court upon pleading guilty to one

count of armed robbery [1] and two counts of petty larceny.[2] Szeratics was sentenced to 15 years on the armed robbery count and one year on each of the petty larceny counts, the latter to be served concurrently with the robbery sentence. We have concluded upon consideration of the particular circumstances appearing in this case that the superior court's sentence is excessive.

The facts concerning the robbery are uncontested. On December 29, 1976, at approximately 12:20 a.m., Szeratics and two men entered the Quik Stop Grocery in Anchorage. While the men walked through the store, Szeratics produced a derringer and demanded that the clerk give her the money. The clerk handed her $31 and the three left in their car.

After being apprehended, Szeratics explained to the police that she had given three men a ride to Ft. Richardson. While driving there, all had discussed needing money and the possibility of performing a robbery. Szeratics had said she had a gun and a mask; one of the men had told her to drive to the Quik Stop Grocery, and had instructed her on how to approach the clerk and demand the money.

When the armed robbery was committed and when sentence was imposed, Jeanetta Szeratics was 18 years old. Her background is as follows. Her parents were refugees of the Hungarian Revolt who settled in Anchorage in 1956. They were divorced in 1969, primarily as a result of Mr. Szeratics' abuse of alcohol. Subsequently, both parents remarried; Jeanetta lived with her mother. In 1972, her mother learned that the stepfather repeatedly had molested Jeanetta.

Szeratics managed to complete 9 years of formal education. Her legitimate income has been supplemented by proceeds from prostitution since she was 14. The record further shows that she has had a long history of drug use and abuse.[3] From August 1972 until July 1976, Szeratics had considerable contact with juvenile homes and authorities.[4] On July 8, 1976, Szeratics was

---

1. AS 11.15.240 provides:

    *Robbery.* A person who, by force or violence, or by putting in fear, steals and takes anything of value from the person of another is guilty of robbery, and is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year. AS 11.15.295 enhances the punishment when firearms are used in the commission of certain crimes:

    *Use of firearms during the commission of certain crimes.* A person who uses or carries a firearm during the commission of a robbery, assault, murder, rape, burglary, or kidnapping is guilty of a felony and upon conviction for a first offense is punishable by imprisonment for not less than 10 years. Upon conviction for a second or subsequent offense in violation of this section, the offender shall be imprisoned for not less than 25 years.

2. These two charges were for shoplifting from the Sears Roebuck and Montgomery Ward Stores. AS 11.20.140 provides, in part:

    Upon conviction, if the property stolen exceeds $250 in value, a person guilty of larceny is punishable by imprisonment for not less than one nor more than 10 years. If the property stolen does not exceed $250 in value, the person, upon conviction, is punishable by imprisonment for not less than one month nor more than one year, or by a fine of not less than $25 nor more than $250, or by both.

3. In this regard the presentence report contains the following data:

    The defendant has allegedly smoked Marijuana since she was 8 years of age, consumed large amounts of LSD at 13 years of age, and began taking amphetamines, barbiturates and heroin at approximately 14 years of age. In addition, she has used Cocaine, Morphine and Opium. She states that she 'mostly stayed with Heroin; I love Heroin.'

    Although the defendant refers to herself as having been addicted to drugs on various occasions, I am unable to find any documentation that this statement by her is factual; that is, that she has ever suffered from withdrawal symptoms. There is every indication that she expended large amounts of money to supply herself and others with drugs and that there is strong likelihood that in the future she might well become an addict.

4. In August 1972, Szeratics was placed in the Western State University Child Study and Treatment Center. At the end of 1972 she was placed under the care and custody of the Alaska Division of Family and Children's Services. She ran away from her foster home and was placed at the Jesse Lee Home. She ran away three times. In September 1973, she was adjudicated a child in need of supervision. A 24-hour stay at the McLaughlin Youth Center, was

released from the control of the state, from any conditions of probation, and from any supervision of the Division of Corrections. This armed robbery is Szeratics' first felony conviction as an adult.[5] Her adult record shows a fine for driving without a license, the two petty larceny charges and this robbery.

The author of the presentence report recommended that Szeratics be denied probation and given time to serve in jail. He further recommended that once institutionalized, if she were so motivated, she should be considered for placement in a therapeutic community. The officer noted:

> Although the defendant is before the Court for shoplifting and armed robbery, the basis for her difficulty appears to stem from her past and recent need for money to secure drugs. Unless she is given some professional help it is likely that she will again involve herself with the use of drugs and the hard core criminal element. To avoid this speculative lifestyle, she must effect some personal change and acquire an improved self image. To aid in this change, placement in a treatment facility appears more appropriate than jail.

▮ In this sentence appeal, Szeratics has argued that the superior court erred in receiving the testimony of Investigator Smith and in interpreting that testimony as evidence of the guilt of another robbery offense in formulating its sentence.[6] In imposing sentence upon Szeratics, the superior court referred to "activities [she had] engaged in and this use of the gun here and the second use of a gun apparently." The court's mention of a second use apparently refers to the occurrence about which Investigator Smith testified. Szeratics bases her contention that this testimony should not have been considered upon language in our decisions in *Waters v. State,* 483 P.2d 199, 202–03 (Alaska 1971), and *Galaktionoff v. State,* 486 P.2d 919, 923–24 (Alaska 1971), in which we said, in part, that it is error for the sentencing judge to consider crimes not charged and crimes as to which an indictment was returned and subsequently dismissed in fashioning an appropriate sentence.

We have on several occasions clarified this aspect of *Waters* and *Galaktionoff.*[7] In *Hixon v. State,* 508 P.2d 526, 527 n.1 (Alaska 1973), we said:

> Appellant admitted the circumstances concerning the petty larceny convictions together with the commission of the additional felony charges dismissed after sentence herein. Such information which has been thus verified may be used in the sentencing process. *Galaktionoff v.*

---

followed by a temporary placement in a foster home. She violated a condition of her release shortly thereafter and was placed on "indeterminate probation." In May 1974 she was temporarily detained at McLaughlin because she ran away from a foster home. Her probation was revoked and after two months she returned to the foster home. Two months later she ran away from the foster home and spent about two months at McLaughlin. A little over one month after her release from McLaughlin, she committed grand larceny, a probation violation. She was placed in Future House and was adjudicated a delinquent. After a month and a half at Future House, she escaped. When apprehended, she was placed in McLaughlin. One month later she was released to Long House.

5. At the sentencing hearing, the state presented testimony from Investigator Smith of the Anchorage Police Department concerning a second robbery in which Investigator Smith testified that Szeratics admitted participating.

Investigator Smith testified that he questioned Szeratics about a robbery of the 49th Star Liquor. She first indicated she knew someone who had been involved but denied she had been. Later, Smith received a photograph taken by the camera at the liquor store which pictured a person in a ski mask whom he recognized as Szeratics. Smith confronted her with the photo and he testified that she admitted it was she. The robbery at the liquor store and the robbery to which Szeratics pled guilty occurred approximately within an hour of each other.

6. See note 5 *supra,* for the substance of Investigator Smith's testimony at the sentencing hearing.

7. *See, e.g., Evans v. State,* 550 P.2d 830, 847 (Alaska 1976); *Layland v. State,* 549 P.2d 1182, 1183–84 n. 5 (Alaska 1976); *Adams v. State,* 521 P.2d 516, 519 (Alaska 1974); *Hixon v. State,* 508 P.2d 526, 527 n. 1 (Alaska 1973).

*State,* 486 P.2d 919, 922–23 (Alaska 197[1]), is not intended to restrict the trial court from using verified information concerning additional crimes where the defendant is informed of the information and given an opportunity to explain or admit it. (citation omitted)

This court has placed considerable emphasis on the requirements of "verified information" and the "opportunity to explain or admit" the allegations. Typical of this approach is our opinion in *Evans v. State,* 550 P.2d 830, 847 (Alaska 1976), where we said:

> Here there were apparently reliable witnesses who would testify, based on personal knowledge, to Evans' misconduct. Of particular significance is the fact that Evans was afforded the opportunity to cross-examine these witnesses and to rebut their testimony. Thus, the circumstances in the case at bar are distinguishable from unexplained police contacts where the ultimate disposition was not disclosed.[8] (footnotes omitted)

In the case at bar, as in *Evans,* the testimony of Investigator Smith was apparently reliable and Szeratics was afforded an opportunity to cross-examine the witness and to rebut the officer's testimony. Thus, we find no error in the superior court's reception and consideration of Investigator Smith's testimony relating to Szeratics' participation in a second robbery.

Szeratics also argues that the 15-year sentence is excessive because the maximum sentence for an offense should be reserved for the worst offender in the class. Closely aligned with this contention is Szeratics' further argument that the superior court's imposition of the maximum sentence on the armed robbery charge ignored the principle of reformation as set forth in Article I, Section 12 of the Alaska Constitution[9] and the sentencing criteria articulated by this court in *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970).

In articulating its reasons for the sentence it rendered, the superior court stated, in part:

> Well, it's tragic, a young very attractive girl your age. True, you've had a tragic life, but you've had some chances as a juvenile . . . to correct yourself. In reading your report here and the attitude you take on this there's no salvation for you in view of your present attitude except early—either death directly by somebody shooting you in a robbery, or death by use of drugs. . . . I wish that . . . you had some insight as to your problem and that you're willing to accept help, but you aren't. You're apparently of age in which it's hard for young people to understand that people are trying to help them out, but apparently you've taken a hard stand and I'm going to take just as hard a stand. We're going to clash and the thing is you're going to stay in custody a long time unless you take this shock treatment and decide you want some help. Now, we've got people sitting right out here now ready to help you, but you don't have the attitude that anyone can help you. Now, I'm not going to turn you loose onto society where you can prey on society. You're just going to stay in prison, as far as I'm concerned, until you can determine that you're going to conduct yourself properly where you don't put society in jeopardy. . . . So you've got your chance and I hope what I'm going to do to you will be a shock enough to you that you'll decide to get some treatment, but if you don't I hope you have to spend every day in prison. Now, the most I can give you . . . is 15 years and that's what I'm going to give

---

8. The situation in which the evidence of police contacts should be excluded is illustrated by *Tommy v. State,* 551 P.2d 179 (Alaska 1976). Tommy had been charged with two additional counts which had been dismissed as a result of a plea bargain. He denied guilt as to both counts. The sentencing judge properly did not consider the counts in sentencing. *Accord,*

*Smith v. State,* 531 P.2d 1273, 1277 (Alaska 1975).

9. Article I, section 12 provides, in part:
   Penal administration shall be based on the principle of reformation and upon the need for protecting the public.

you. I'm required to give you 10 because you used a gun, but not only that I'm going to give you more and I hope that you have a change of mind and that you're willing to get in a program and that probation—and I hope within 60 days you can come back in here and I can reduce this sentence, but I'm not going to reduce it one bit until you have a change in attitude.[10]

■ As was indicated at the outset, we have concluded that the superior court's imposition of the maximum length of incarceration is not warranted. Thus, we hold that the sentence was excessive and that the case must be remanded for further sentencing proceedings. Initially, we note that the superior court did not find Szeratics to be a "worst type of offender," nor is there evidentiary support in the record for such a finding. This robbery conviction was Szeratics' first felony conviction as an adult.[11] Although the use of a firearm increases the potential danger to others from such an act, such use alone is not sufficient to categorize one as a "worst type of offender."

■ Another facet of the superior court's sentence requires comment. The sentencing court did not indicate that it employed the *Chaney* criteria in sentencing Szeratics. It did express concern with protecting society from her behavior until she changed her attitudes, and with deterring her from further illegal behavior. Additionally, one can infer that the court considered Szeratics' chances for rehabilitation to be slight unless she enrolled in a therapeutic program. Notwithstanding these considerations, a reasonable construction of the court's sentencing comments is that the court imposed the maximum sentence not as a result of an application of the *Chaney* criteria, but as an effort to coerce Szeratics into a rehabilitative program. That is an improper use of sentencing. While it is no doubt true that Szeratics' reluctance to participate in such a program might indicate a minimal likelihood of "rehabilitation of the offender into a noncriminal member of society,"[12] nevertheless, the other criteria deserved examination.[13]

One additional aspect of the sentencing proceedings will be addressed. The superior court's sentencing remarks reveal that it imposed the particular sentence it did in the belief that Szeratics had taken a harsh

**10.** Originally there had been talk about placing Szeratics in Family House. Although Family House was willing to accept her, Szeratics felt that she was not ready for Family House and would prefer a jail sentence.

Szeratics made the following statement to the probation officer:

Sometimes I want to do part of the time and end up on probation; to heck with Family House, that's too much time. I'd rather do two years in jail and end up on probation than spend two years there and mess up and have to do a whole bunch of time. There's a good possibility that I'll mess up, that's just being honest. When I get to the position where I want to super change, where I'm really, really am sick, yeh, I'm sick of the shit I'm doing now. But, when I get to the position where I am totally sick and there are other things I want to change about too, then I'd rather have Family House on the side, not as an escaping thing but rather for some place for me to really change and not some place to fail. Instead of trying to get out of time I'd rather wait and go over there and really change. If I was to wait and if I ended up on the streets and was sick and started really thinking about how I was messing up,

I'd have a better chance of making it through the program.

At this time I'd like to change and know myself. I do want to change and will try it at Family House but really can't make no promises. . . . [I]f I had friends to help me through the concept, I could do it. If they fail on that help, that's when I'm going to split. I'd like the chance of a rehabilitation program but only if I know I'm going to be helped.

**11.** We note that the robbery of the Quik Stop Grocery to which appellant pled guilty occurred approximately within one hour of the robbery of the 49th Star Liquor store which was testified to by Investigator Smith at the sentencing hearing. *Compare Cleary v. State,* 548 P.2d 952, 956 (Alaska 1976).

**12.** *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970).

**13.** In regard to Szeratics' emotional problems, it is imperative that meaningful medical, psychiatric and psychological treatment be made available to her during any period of incarceration and supervised parole. *See Waters v. State,* 483 P.2d 199, 202 (Alaska 1971).

stand and that the court in turn had to assume an equally harsh posture. The superior court further indicated its intent that Szeratics remain incarcerated for the maximum allowable period unless, upon her return to the court for a reduction in sentence, she were to indicate her willingness to participate in a rehabilitative program. The state, in its brief, views the superior court's sentence in the following manner:

> [T]he trial court did not simply sentence the defendant to 15 years with the expectation that that was the end of the matter. The trial court specifically, and repeatedly, indicated that it was prepared and willing to modify the sentence at such time as the defendant became willing to recognize and accept the need for rehabilitative programs. She was, in a very real sense, informed that she carried the keys to the prison door in her own pocket . . ..

■ We think this an appropriate occasion to reiterate the observations made in *Davenport v. State,* 543 P.2d 1204, 1210–11 (Alaska 1975), where we said:

> In rendering this sentence, the judge apparently was motivated in part by the belief that he could review this sentence at a later time, if circumstances warranted. This is not the first case in which the superior court has attempted to retain sentencing jurisdiction after the imposition of sentence.[14] Nevertheless, we have been unable to discover any authority which would sanction the expansion of the superior court's jurisdiction to pass sentence,[15] into a realm of review and modification which is statutorily vested in either this court,[16] or the executive branch of government.[17] We hold, therefore, that the superior court lacks jurisdiction to review its own sentence, after it has entered a judgment on the matter, more than 60 days after it has imposed sentence.[18]

Thus, contrary to the state's position, the superior court is without authority to modify the 15-year sentence absent a timely Rule 35(a) motion.

Reversed and remanded for resentencing.

BURKE, Justice, concurring in the result.

I concur in the result.

Like the majority, I conclude from the superior court's sentencing comments that it imposed a maximum sentence not as a result of an application of the *Chaney* criteria, but rather to coerce Szeratics into a rehabilitation program, under the mistaken belief that at some future date the court could reconsider its sentence. I agree that this was an improper use of the court's sentencing power. These facts alone, in my opinion, require us to remand the case for resentencing. Therefore, I concur in the result.

I find it unnecessary to reach the issue of whether or not the sentence in this case was excessive.

---

**14.** *See Smith v. State,* 531 P.2d 1273, 1276 n.4 (Alaska 1975) (footnote in original).

**15.** *See* AS 11.05.140 (footnote in original).

**16.** *See* AS 12.55.120 (footnote in original).

**17.** *See* AS 33.15.010 *et seq.* (parole) and AS 33.20.070 (the governor's power of pardon, commutation and reprieve) (footnote in original).

**18.** *See* AS 12.55.080; Alaska R.Crim.P. 35(a) (footnote in original).