Jeffery TING, Appellant,

v.

MUNICIPALITY OF ANCHORAGE,
Appellee.

No. A–6198.

Court of Appeals of Alaska.

Jan. 3, 1997.

Jason A. Steen, James E. Gorton & Associates, Anchorage, for Appellant.

Carmen E. ClarkWeeks, Municipal Prosecutor, and Mary K. Hughes, Municipal Attorney, Anchorage, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

COATS, Judge.

In 1993 Jeffery Ting pleaded no contest to misdemeanor assault[1] for intentionally or recklessly striking his eight-year-old stepdaughter, L.B., in the face with an open hand, causing injury. The district court sentenced Ting to 360 days with 330 days suspended, and placed Ting on probation for three years. Two and a half years later, in January 1996, Ting again assaulted L.B. by kicking her while she sat on the floor. Ting's kick to L.B.'s foot caused her knee to strike and injure her eye. Ting again pleaded no contest to misdemeanor assault. As a result of this new assault the court revoked Ting's probation in the 1993 case.

The two assault convictions at issue here represent the only instances in which Ting has been prosecuted for physically abusing L.B., but the sentencing court was presented with a more comprehensive picture of Ting's history of assaultive behavior against this victim.

Ting first came to the attention of the State Division of Family and Youth Services (DFYS) in 1990, when, in the space of three months, three separate neighbors reported abuse by Ting of the then-five-year-old L.B. These three incidents, in which Ting locked L.B. outside in the rain in her bathing suit, gave her a bloody nose by slapping her in the face, slammed her repeatedly into a wall, and hit her with part of a crib, were followed later in 1990 by a more serious episode.

In November 1990 Ting got angry with L.B. for missing her school bus, and hit her repeatedly with a belt over the course of two days, giving her a black and swollen eye, and bruising her arm. DFYS removed L.B. from the home for several months following this assault, and ordered Ting to attend parent-

---

1. Anchorage Municipal Code (AMC) § 08.05.030A.

ing classes, the Male Awareness counseling program, and alcohol treatment. DFYS also had a parenting counselor visit Ting's home. Despite this DFYS intervention, L.B.'s teachers reported five more assaults by Ting against L.B. in 1991 and 1992, including one in which Ting injured L.B.'s right eye, and another in which he hit L.B. in the head, causing a bruise and a visible bump. In 1991 DFYS again took temporary custody of L.B., and again sent a parenting counselor into the home and ordered Ting to attend parenting classes. As he had in 1990, Ting refused to follow the recommendation that he attend Alcoholics Anonymous meetings.

Ting was finally prosecuted in 1993 when he punished L.B. for a less-than-perfect report card by hitting her so hard that he knocked her across the room, and slapping her face hard enough to cause visible handprints. This assault was the basis for Ting's conviction in case number 93–2445, for which he was originally sentenced to 360 days with 330 days suspended. Following this conviction Ting was again ordered to attend the Male Awareness Program and an alcohol treatment program.

On January 4, 1995, L.B.'s teacher reported to DFYS that L.B.'s face was bruised because Ting had hit her in the face and then pushed her into a TV set, which fell on her. The next day, according to two adult witnesses, Ting hit L.B. in the mouth, bloodying her face. He then put a gun into nine-year-old L.B.'s hands and told her to shoot him. In November 1995 Ting grabbed L.B. by the hair and threatened to stick her head into a toilet, then pushed her head onto the floor, causing a one-inch bump and leaving scrape marks where her hair had been pulled out of her head. This was followed two months later by the assault for which Ting was convicted in case number 96–476.

L.B.'s state-appointed guardian ad litem, Marcia Honea, gave the victim impact statement at Ting's sentencing hearing. Honea told the court that L.B. was fragile and fearful, with low self-esteem and emotional problems that would likely require long-term therapy.

The prosecutor reported that a doctor had examined L.B. a month after Ting's final assault against her, and had found permanent damage to L.B.'s eyes due to the use of force on her face. The doctor found that the naturally gel-like substance of L.B.'s eyes had liquefied, and that she had bone chips floating in the fluid of her eyes. As an eleven-year-old, L.B. had the eyes of a forty-five-year-old.

■ The district court, Judge Stephanie Rhoades, found Ting to be a "worst offender" based on his five-year history of charged and uncharged physical abuse of L.B. The court ordered Ting to serve the 330 previously suspended days in the 1993 case, and imposed a consecutive term of 365 days to serve for the 1996 conviction. Ting appeals these sentences, arguing that they are excessive. We affirm.

Ting does not challenge the court's finding that he is a worst offender, nor does he dispute that this finding supports the imposition of the maximum sentence of one year for misdemeanor assault. *See State v. Graybill*, 695 P.2d 725, 731 (Alaska 1985); *Looney v. State*, 826 P.2d 775, 780 (Alaska App.1992). He argues, however, that his sentence was not necessary to achieve the sentencing goal of deterrence.

Judge Rhoades expressly found that Ting posed a continuing extreme danger to L.B., that neither the child's mother nor the state's child protection agency was able to protect L.B. from Ting, that Ting was unlikely to be rehabilitated and unlikely to follow court orders to stay away from L.B., and that "isolating [Ting] so that [he did] not pose a continued danger to this one particular child is critical." These findings are amply supported in the sentencing record.

Ting's argument that the court gave insufficient attention to his rehabilitation, and his suggestions that his previous attempts at rehabilitating himself have been successful, are unpersuasive. As evidence of his demonstrated ability to rehabilitate himself, Ting points to his completion of his probation on a suspended imposition of sentence and the subsequent setting aside of his 1990 conviction for assaulting his wife. He also contends that he "faithfully and positively" participated in court-ordered rehabilitation

programs up until the time of his most recent assault on L.B. Ting cites no support in the record for this contention, but even assuming that Ting's attendance and participation in rehabilitative programs has been satisfactory, it is clear from the record that his attempts at rehabilitating himself have been patently unsuccessful. Ting's continued and unallayed abuse of L.B. belies his claims of success.

 Judge Rhoades' sentencing remarks reflect a careful consideration of all the necessary sentencing objectives. *See State v. Chaney,* 477 P.2d 441 (Alaska 1970). The sentencing court has discretion to determine the priority and relative weight of these objectives in each case. *Asitonia v. State,* 508 P.2d 1023, 1026 (Alaska 1973). In light of Ting's failure to benefit from repeated past attempts at rehabilitation, and of the continuing danger he poses to L.B., the court did not abuse its discretion in emphasizing the goals of specific and general deterrence, and of isolating Ting for the protection of the public.

Having reviewed the entire sentencing record, we conclude that the composite sentence imposed is not clearly mistaken. *McClain v. State,* 519 P.2d 811, 814 (Alaska 1974). Ting's sentences are AFFIRMED.