Otto W. EVANS, Appellant,

v.

STATE of Alaska, Appellee.

No. 2392.

Supreme Court of Alaska.

May 28, 1976.

---

**832**

Max F. Gruenberg, Jr., of Gruenberg, Willard & Smith, Anchorage, for appellant.

Stephen G. Dunning, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and ERWIN, JJ.

RABINOWITZ, Justice.

Otto W. Evans brings this appeal from a criminal conviction for possession of narcotics in violation of AS 17.10.010.

On November 4, 1973, Larry Grant arrived at the apartment of George Pollard late in the evening. According to his own testimony, Grant was at that time employed by the Alaska State Troopers as a "special officer" assigned to narcotics investigations. His purpose that evening was to purchase illicit drugs from Pollard, and after some bargaining they agreed to the sale of six "balloons" of heroin for the sum of $100. Pollard placed the balloons on his coffee table and invited Grant to open them and inspect their contents, which he did. According to his testimony, Grant then "simulated" sniffing the heroin he was purchasing. At this point Evans, who was "beebopping around", entered the room, approached the men, and "kind of asked, or told" Grant that he wanted some of the heroin. Grant allowed him to take a small quantity sufficient for a "fix", then Grant snatched up the three bags he had opened. According to his testimony, Grant gave the narcotics to Evans out of fear that he might otherwise expose himself as an undercover police agent. After taking the narcotic, Evans remarked that he would return one fourth of a balloon the next day, which Grant responded was fine with him.

After wrapping his purchase in a paper towel, at Evans' suggestion, Grant departed and telephoned the state police to report the purchase. A short time later he turned the evidence over to the state troopers. A chemical test conducted by an expert medical technologist determined that the contents of the balloons were heroin.

Evans was subsequently indicted for possession of heroin. Prior to trial defense counsel moved for a judgment of acquittal on the grounds that the facts made out a defense of entrapment as a matter of law. The superior court declined to rule on the motion at that stage in the development of evidence. In response to a prosecution motion, the superior court did grant a protective order which prevented the introduction at trial of evidence concerning various facets of Grant's background. As summarized by Superior Court Judge Kalamarides at the outset of trial, the protective order precluded evidence of Grant's previous criminal charges and convictions, his history of heavy narcotics use prior to the incident in question, his involvement in similar narcotics cases in the Anchorage area, and the circumstances of his original employment as an undercover police agent.

From the very inception of the trial it was brought home to the jury that Grant's credibilty was a major issue, as his was the only testimony linking Evans to criminal conduct. Evans attempted to undermine Grant's testimony by establishing that Grant was biased in favor of the police and had a personal interest in securing Evans' conviction. It was Evans' theory that Grant entertained an overriding desire to become a uniformed police officer, which was frustrated by his previous record of criminal misconduct and drug use and which fostered in Grant a perceived need to demonstrate his effectiveness in law enforcement by obtaining narcotics convictions. Counsel for Evans did adduce testimony that Grant's career objective was to be a regular police officer, but the superior court denied his motion to vacate the protective order and he was precluded from exploring the basis of Grant's purported bias before the jury. Later Evans was allowed to cross-examine somewhat more broadly on Grant's use of narcotics, after favorable character evidence had been presented by the state. Grant testified that he had been addicted for a period of three months some years earlier while in Washington. However, the superior court denied Evans' request that Grant display his track marks to the jury.

George Pollard was called as a witness by the prosecution. Out of the presence of the jury, counsel for Evans propounded two questions, which Pollard declined to answer on advice of his counsel and in the exercise of his fifth amendment privilege. Pollard was thereupon excused as a witness.

At the close of evidence Evans moved for a judgment of acquittal on three grounds: entrapment as a matter of law; that Grant was an accomplice whose testimony lacked the corroboration required by AS 12.45.020; and the insufficiency of the prosecution's evidence. The superior court denied all three motions, as well as instructions requested by Evans based on entrapment and complicity. The jury found Evans guilty of possession of narcotics in violation of AS 17.10.010.

The presentence report contained a full confession by Evans apparently taken in violation of his constitutional rights. At sentencing the superior court announced its intention to disregard that portion of the report. Evans took the stand and testified generally about his background, employment, and prior criminal record. On cross-examination the prosecutor raised several matters to which counsel for Evans vigorously but unsuccessfully objected. The court sentenced Evans to five years' imprisonment with two years suspended.

Evans' first contention is that the trial court unduly restricted the scope of cross-examination of the state's chief witness, Larry Grant, in violation of his right of confrontation guaranteed by the United States and Alaska constitutions.[1] Specifically, Evans was prohibited by the protec-

---

1. U.S.Const. Amend. VI; Alaska Const. art. 1 § 11.

tive order and superior court rulings from inquiring into the following matters:

1. Grant's 1969 felony conviction for grand larceny, which was later annulled by a certificate of rehabilitation;

2. Grant's FBI "rap" sheet, which would have revealed a 1962 conviction for petty theft, a 1964 charge for grand larceny, and a 1970 charge for petty larceny;

3. The circumstances under which Grant went to work for the Seattle police in 1969;

4. The details of Grant's narcotics addiction; and

5. Grant's *modus operandi* as an undercover police operative at the time he charged Evans.

The record does not fully reflect the basis for the superior court's decision to enter the protective order.[2] However, from the briefs, the memoranda, and various portions of the trial transcript it can be surmised that the 1969 conviction was excluded pursuant to Criminal Rule 26(f)(3),[3] the FBI record was shielded pursuant to Criminal Rule 26(f)(2), and Civil Rule 43(g)(11)[b],[4] and the other matters were excluded because they were collateral and did not result in conviction.

The testimony of Grant was critical to the state's case, and Evans' basic attack went to possible bias and prejudice. Spe-

cifically, Evans contended that Grant's strong desire to become a regular, uniformed police officer was frustrated by his criminal record and his pattern of ongoing criminal conduct. To establish his credentials for police work, Grant was allegedly driven to perform extraordinary services which would demonstrate his effectiveness. In other words, he was unconsciously or consciously motivated to falsify or at least color his testimony in order to establish a good record by securing convictions.

Evans urges that each aspect of the evidence which he sought to adduce on cross-examination would have gone to establish that bias. The 1969 felony conviction remained a detriment to Grant's employment prospects, despite the subsequent certificate of rehabilitation. The other criminal charges, even though too remote or untrustworthy to constitute impeachment evidence in a criminal trial, were matters which no police department would overlook in reviewing his credentials for employment. His record of prior heavy narcotics use was another stumbling block to regular employment, and, of course, evidence of renewed addiction would have been even more detrimental. The circumstances of his original employment with the police in Washington suggested, at least to Evans, that Grant worked as an informant in exchange for deferral of possible drug charges. According to Evans, this was

---

2. Apparently the order was granted May 1, 1974, during a hushed conversation at the bench which was inaudible to the recording system. When the trial resumed almost four months later, Judge Kalamarides summarized his understanding of the scope of the protective order.

3. Alaska R.Crim.P. 26(f)(3) provides:
 Evidence of a conviction is inadmissible under this rule if:
 (i) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure, and
 (ii) the procedure under which the same was granted or issued required a substantial showing or rehabilitation or was based on innocence.

4. Alaska R.Crim.P. 26(f)(2) provides:
 Evidence of a conviction under this rule is inadmissible if a period of more than 5 years has elapsed since the date of the conviction of the witness.
 Alaska R.Civ.P. 43(g)(11)[b], made applicable to this case by Crim.R. 26(a) provides:
 A witness may be impeached by the party against whom he was called by contradictory evidence, or by evidence that his general reputation for truth is bad, or that his moral character is such as to render him unworthy of belief. He may not be impeached by evidence of particular wrongful acts, except that it may be shown by the examination of the witness or the record of a judgment that he has been convicted of a crime.

germane to show that Grant had been operating not as a salaried "special agent" but as an informant seeking to curry continued favor with the authorities. Equally relevant would have been Grant's alleged *modus operandi*, which was to dispense heroin as a prelude to apprehending the beneficiaries of his largesse. Even if undertaken in his line of work, the alleged distribution could have subjected Grant to renewed criminal prosecution and may have been a further source of anxiety to him. Moreover, this unsavory mode of securing convictions was arguably indicative of the lengths Grant would go to to establish his effectiveness as an undercover agent. Taken together, Evans contends these evidentiary pieces would have established that ". . . Larry Grant had a vital, direct, and substantial financial and occupational interest in obtaining the defendant's conviction." [5]

The state's response to Evans' constitutional claim is that his right of confrontation was not infringed because the right to cross-examine is not absolute. The state argues each issue was sufficiently raised and explored to satisfy constitutional norms, and beyond that, the scope of examination is a matter for the sound discretion of the trial judge. In this case it is urged that the superior court's rulings were not an abuse of that discretion.

The sixth amendment to the United States Constitution guarantees an accused the right of confrontation in all criminal matters, which entails the right of cross-examination.[6] This right is secured through the 14th amendment in state as well as federal criminal proceedings.[7] The Alaska Constitution also guarantees this right.[8]

The right of cross-examination has been described ". . . . as beyond any doubt the greatest legal engine ever invented for the discovery of truth." [9] To that end, it is the vehicle by which the credibility of adverse witnesses is tested. One traditional method of impeachment is to demonstrate that a witness harbors bias or prejudice toward one of the parties or a personal interest in the outcome of the trial which can be expected to color his testimony and undermine its reliability.[10] Numerous decisions have expressed the view that a trial court must be particularly solicitous of cross-examination intended to

---

5. Evans also claims that some of the excluded material would have been relevant for purposes other than to show bias. Specifically, the circumstances under which Grant went to work for the police and his record of performance with the Alaskan authorities would have revealed that Grant was an informer being compensated on an irregular basis, with both monetary and nonmonetary remuneration. This would have directly contradicted testimony that Grant was a "special officer" of the Alaska State Troopers on a regular salaried basis. Further, exploration of Grant's heroin use would have undermined his denial of continued addiction. If contradictory evidence had been forthcoming, it would have also impeached Grant's testimony that on the night in question he was not under the influence of heroin and only "simulated" sniffing the contraband. The excluded evidence relating to Grant's *modus operandi* would have been highly relevant to establish entrapment and complicity. Finally, much of the evidence excluded under the protective order

relating to Grant's prior criminal misdeeds and his narcotics use would have been relevant to rebut Officer Needham's testimony that Grant came "highly recommended" as a man of impeccable character.

In light of the disposition of this appeal, it is unnecessary for us to consider these aspects of Evans' argument.

6. *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 39 L.Ed.2d 347, 353 (1974) ; *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934, 937 (1965).

7. *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968) ; *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed. 2d 923 (1965).

8. Alaska Const. art. 1 § 11.

9. 5 J. Wigmore, Evidence § 1367, at 32 (Chadbourn rev. 1974).

10. *Whitton v. State,* 479 P.2d 302, 313–17 (Alaska 1970).

disclose such bias or prejudice.[11] For example, broad opportunity for examination should be allowed if its object is to establish that an adverse witness in a criminal matter is giving his testimony in anticipation of favorable personal treatment by the state.[12]

▮▮▮ Although cross-examination to show bias in a particular case should be given greater latitude than a general, broadside attack on the credibility of a witness,[13] even the right to cross-examine as to bias is not absolute and unqualified.[14] It does not entail the right to harass, annoy, or humiliate a witness on cross-examination,[15] nor to engage in repetitive questioning,[16] nor to inquire into matters which would expose the witness to danger of physical harm.[17] Misconduct which is so old that it has little probative bearing on a witness' present impartiality is properly excludable.[18]

Thus, the question before this court is whether Evans was given the opportunity to adduce before the jury facts sufficient to support his contentions regarding Grant's purported bias and self-interest. The record discloses that the state established Grant's aspiration to become a regular police officer and the circumstances under which Grant had been recruited by Alaskan enforcement authorities. Grant also conceded that he at one time had maintained a $100 per day heroin habit, that he had suffered one brief relapse, and that he had twice illegally dispensed narcotics in recent undercover work. There is little question but that the additional evidence sought by Evans would have bolstered his argument that Grant had a special reason to curry favor with the authorities, both to avoid slipping into the status of criminal suspect and hopefully to advance into the ranks of the uniformed police. The prior felony conviction and other criminal charges would have made his "major career goal" appear considerably more untenable, his situation that much more desperate. Proof of continued illegal conduct would have enhanced Evans' portrait of a frustrated man both wary of the police and anxious to please. Helpful as such evidence would have been, the issue is whether it was constitutional error to foreclose it to Evans.

In *R.L.R. v. State*, 487 P.2d 27 (Alaska 1971), we reviewed a juvenile's adjudication of delinquency for the sale of LSD to a police informant. The superior court had sustained objections to cross-examination of the informant directed at the circumstances and frequency of his employment by the police, on the grounds of relevancy. We condemned those rulings as

---

11. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *Thomas v. State*, 522 P.2d 528 (Alaska 1974); *Gonzales v. State*, 521 P.2d 512 (Alaska 1974); *Smith v. State*, 431 P.2d 507 (Alaska 1967).

12. *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *United States v. Harris*, 501 F.2d 1 (9th Cir. 1974); *United States v. Fowler*, 151 U.S.App.D.C. 79, 465 F.2d 664 (1972); *United States v. Rodriguez*, 439 F.2d 782 (9th Cir. 1971); *Doe v. State*, 487 P.2d 47 (Alaska 1971); *R. L. R. v. State*, 487 P.2d 27 (Alaska 1971); *Whitton v. State*, 479 P.2d 302 (Alaska 1970).

13. "There is a plain distinction between attacking credibility in a general way, and showing motive to testify falsely as to a particular matter." *Whitton v. State*, 479 P.2d 302, 317 (Alaska 1970) (footnote omitted). *See also Gonzales v. State*, 521 P.2d 512, 514–15 (Alaska 1974).

14. *Davis v. Alaska*, 415 U.S. 308, 321, 94 S.Ct. 1105, 39 L.Ed. 347, 356 (1974) (Stewart, J., concurring); *United States v. McKinley*, 493 F.2d 547 (5th Cir. 1974); *Gonzales v. State*, 521 P.2d 512 (Alaska 1974).

15. *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624, 629 (1931).

16. *United States v. Dickens*, 417 F.2d 958, 961 (8th Cir. 1969).

17. *Kirschbaum v. United States*, 407 F.2d 562 (8th Cir. 1969); *United States v. Rich*, 262 F.2d 415 (2d Cir. 1959).

18. *Snyder v. Coiner*, 510 F.2d 224, 226 (4th Cir. 1975); cf. *Gonzales v. State*, 521 P.2d 512 (Alaska 1974).

unduly restrictive of R.L.R.'s right of cross-examination:

> Had Want [the informant] been required to show how his employment came about, he might have been shown to have an incentive to bring about RLR's conviction in order to secure leniency for himself with respect to some past crime, as in *Whitton v. State*. Limiting RLR's attorney to asking Want if he was paid to act as an informer unduly restricted cross-examination, since money is not the only inducement which might have been offered to Want. '[G]reat liberality should be given defense counsel in cross-examination of a prosecution witness with respect to his motive for testifying.' Cross-examination to show bias because of expectation of immunity from prosecution is one of the safeguards essential to a fair trial, and undue limitation on such cross-examination is reversible error without any need for a showing of prejudice. The trial court committed reversible error in unduly limiting cross-examination of Joseph Want.[19]

A similar result was reached in *Doe v. State*, 487 P.2d 47, 57–58 (Alaska 1971).

In *Whitton v. State*, 479 P.2d 302, 316–17 (Alaska 1970), the accused attempted in his cross-examination of a prosecution witness to establish that the witness had separate criminal charges pending against him and may have anticipated leniency from the police in exchange for his incriminating testimony. The trial court precluded examination into these other criminal charges, apparently relying upon Civil Rule 43(g)(11)[b]. This court reversed, holding that Rule 43 was not violated when the purpose of the cross-examination was not to undermine the witness' general credibility but to establish the probability of bias. We said that great latitude should have been afforded the defense where the objective was to demonstrate partiality attributable either to formal pending criminal charges or merely to recent criminal conduct which might be the subject of future prosecution. *See also Smith v. State*, 431 P.2d 507, 509–10 (Alaska 1967).

In *Hutchings v. State*, 518 P.2d 767 (Alaska 1974), appellant was convicted of selling amphetamines, largely on the testimony of a single undercover police agent. At trial Hutchings attempted to elicit on cross-examination that the undercover agent had been subsequently discharged from the police force and was at that time seeking reinstatement. The state's objection to these questions as immaterial and irrelevant was sustained. We reversed, concluding that the purpose of the cross-examination had been to establish bias and that the *Whitton* and *R.L.R.* opinions were largely controlling.

These decisions bear closely upon the case at hand. Indeed, the facts of *R.L.R.* are so akin to those of the case at bar that we regard it as dispositive of this appeal. There, as here, the only evidence connecting the defendant to an illicit drug sale was the testimony of a police informer; and there, as here, a line of questioning which might have indicated a prosecution bias was excluded. It is true that in *R.L.R.* defense counsel sought to ascertain whether the informer-witness hoped to avoid or mitigate criminal punishment by testifying for the state, while here reinstatement with the police force was the potential source of prosecution bias; but this is a distinction without a difference. What is material is that the opportunity of the witness to achieve either of these objectives could serve as a powerful motivation to shade one's testimony, either unconsciously or intentionally. This being so, the appellant should have been allowed to explore the possibility of bias presented by the fact of [the agent's] discharge and his subsequent efforts to be reinstated.[20]

---

19. 487 P.2d at 44 (footnotes omitted).

20. 518 P.2d at 769. *United States v. Fowler*, 151 U.S.App.D.C. 79, 465 F.2d 664 (1972), was not a dissimilar case in which a narcotics prosecution was built around the testimony of a single undercover agent. The informer had been discharged from the police depart-

In *Fields v. State,* 487 P.2d 831, 844-47 (Alaska 1971), we disapproved of the use of evidence of narcotics use or addiction to impeach on the assumption that a witness is, by sole virtue of his addiction, inherently unreliable. However, we held it permissible to elicit evidence of addiction to heroin ". . . where such evidence would be independently admissible under some other theory," such as bias or prejudice. Further, in *Davis v. State,* 499 P.2d 1025 (Alaska 1972), we upheld restrictions in the cross-examination of a prosecution witness designed to adduce evidence of bias. The superior court had precluded examination of the witness' probationary status as a youthful offender, in conformity with Rule 23 of the Alaska Rules of Children's Procedure. The United States Supreme Court reversed, holding that the state's interest in the confidentiality of juvenile records was overridden by the accused's sixth amendment right to impeach the credibility of the witness by cross-examination directed to possible bias. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

■ With these precedents in mind we hold that the restrictions on Evans' right to cross-examine Grant were too severe. Fear of criminal prosecution has been recognized as a possible source of witness bias at least since *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), and *Whitton v. State,* 479 P.2d 302 (Alaska 1970), establishes that the mere possibility of future criminal charges is sufficient to open the area. Thus, Ev-

ans had the right to explore Grant's apprehension of possible criminal charges stemming from continued narcotics use or from admittedly illegal conduct in his undercover work. Moreover, if one accepts Evans' contention that Grant was striving to get on the regular police force, his position is not unlike that of the discharged agent in *Hutchings v. State,* 518 P.2d 767 (Alaska 1974). Our decision there demonstrates that, in a case built upon the testimony of a single undercover state operative, the prospect of future employment by the police can operate as a source for potentially conscious or unconscious bias in that witness. In such circumstances the accused has the right to fully explore that possibility of bias. In order to inform the jury of possible improper motivation, the accused is entitled to examine the witness' employment expectations and those circumstances which might otherwise substantially frustrate achievement of those aspirations. While this does not give the accused license to ferret out every shortcoming and misstep by such a witness since early childhood, the accused does have the right to explore those circumstances which might give rise to a compulsion to curry special favor with the authorities.

■ In the case at bar we conclude that Evans was not afforded that opportunity. The matter of the 1969 felony conviction would seem to be controlled by the reasoning of *Davis v. Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L.Ed.2d 347 (1974). A jury could reasonably infer, in light of Grant's professed ambition, that this serious blot

ment, possibly for continued heroin use, and his relationship with the authorities at the time of trial was nebulous. The Court of Appeals held that cross-examination of the agent as to his motivation in testifying had been unduly restricted.

In view of the dependence of the Police Department on his testimony, the stated reason for his dismissal was a fair target for cross-examination. First of all, the stated reason might not have been the only reason. More importantly, however, there were also the additional possibilities implicit in such circumstances, that his testimony might

have been affected by fear of prosecution or hope of favor growing out of the circumstances of his termination. He might have been promised immunity or other advantage. These are possibilities that cannot be overlooked when prior narcotics users are used as narcotics agents—that may have been the case here. It is central to the conclusion here reached that the agent was the principal prosecution witness and in such circumstances a very wide latitude should be allowed in his cross-examination. *Id.* at 666.

on his credentials was a source of motivation to secure Evans' conviction. The state interest in the confidentiality of Grant's rehabilitated conviction is not appreciably stronger than the state's interest in *Davis*, which was required to yield to the accused's constitutional right to a full cross-examination. The other criminal charges also should have been available as evidence of possible bias.[21] Rules of procedure governing evidence admissible for general impeachment of a witness are not barriers to that evidence when it is sought for the specific purpose of showing bias. Further, this is a case where evidence of an extensive history of narcotics use was sought to establish bias rather than to bring the witness into general disrepute. In *Fields v. State*, 487 P. 2d 831, 845–47 (Alaska 1971), we approved the introduction of drug addiction evidence for that particular purpose. Therefore, Evans should have been allowed to develop more fully his theory that Grant repeatedly used narcotics and that the police were fully aware of this use, which Evans contends began even before Grant commenced his undercover work in 1969.[22]

Inasmuch as we have concluded that the superior court erred in unduly restricting the exercise of Evans' constitutional right of cross-examination, we must consider the effect of this error. It is evident after *Davis* that the appropriate standard of review in a case of this nature is the constitutional harmless error standard of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[23] Inasmuch as our own decisions are not entirely consistent on this point,[24] we take this opportunity to reaffirm that when a criminal defendant is denied his constitutional right to confront and cross-examine his principal accuser, the *Chapman* standard controls the effect of that error. That standard requires reversal unless this court can declare a belief that the error was "harmless beyond a reasonable doubt."[25] Under the facts of this case, we can make no

---

21. We note that criminal charges remote in time, lacking a direct offer of proof as to relevancy, may be excluded by the trial court in its discretion.

22. In the particular factual context presented by this record, we cannot say that the superior court erred in forbidding the display of Grant's "track marks" to the jury. There was no offer of proof made with respect to the track marks. Given the impression left by Evans' counsel that the purpose of the demonstration was to prove past addiction, the superior court was well within its discretion in deciding the value of the cumulative evidence was outweighed by its prejudicial effect. *Lewis v. State*, 469 P.2d 689, 695 (Alaska 1970). Since the evidence was excluded on the grounds that it was cumulative, we cannot say that an abuse of discretion occurred.
On retrial if Grant's "track marks" become important to show Grant's addiction or the possibility that he is still a narcotics user, then Evans' counsel should be afforded the opportunity, out of the presence of the jury, to require Grant to make an appropriate display in order to ascertain where there are fresh indications of narcotics use. If the evidence so indicates, then the jury should be permitted to view the track marks.

23. 415 U.S. at 318, 94 S.Ct. 1105, 39 L.Ed. 2d at 355. *See also Snyder v. Coiner*, 510

F.2d 224, 227 (4th Cir. 1975) ; *United States v. Harris*, 501 F.2d 1, 9 (9th Cir. 1974) ; *United States v. Dickens*, 417 F.2d 958, 962 (8th Cir. 1969) ; *State v. Hilling*, 219 N.W. 2d 164, 171 (N.D.1974).

24. In *R.L.R. v. State*, 487 P.2d 27, 44 (Alaska 1971) (footnote omitted), we squarely endorsed use of the *Chapman* standard:
Cross-examination to show bias because of expectation of immunity from prosecution is one of the safeguards essential to a fair trial, and undue limitation on such cross-examination is reversible error *without any need for a showing of prejudice.* (footnote omitted) (emphasis added)
More recently, however, we have reversed convictions in apparent reliance on the nonconstitutional harmless error standard of *Love v. State*, 457 P.2d 622 (Alaska 1969). *See Hutchings v. State*, 518 P.2d 767, 770 n. 10 (Alaska 1974) ; *cf. Thomas v. State*, 522 P.2d 528, 534 (Alaska 1974). We note that these cases were decided prior to the United States Supreme Court decision in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). To the extent they suggest that the *Love* standard is appropriate, they would not be followed today.

25. 386 U.S. at 24, 87 S.Ct. 824, 17 L.Ed. 2d at 711.

such declaration and conclude that the superior court's cross-examination rulings cannot be characterized as harmless error beyond a reasonable doubt.

Although our resolution of Evans' first point of appeal makes it unnecessary to decide the other points raised, we deem it advisable to briefly discuss those issues so as to facilitate a disposition of this criminal case at the new trial. At the close of evidence in the first trial, Evans moved for a judgment of acquittal pursuant to AS 12.-45.020, on the grounds that as a matter of law Grant was an accomplice whose testimony was uncorroborated. AS 12.45.020 provides:

> A conviction shall not be had on the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the crime; and the corroboration is not sufficient if it merely shows the commission of the crime or the circumstances of the commission.

In the alternative, Evans, requested two jury instructions which defined complicity and duress, and which would have instructed the jury to acquit him if it found that Grant had been a willing accomplice whose testimony was uncorroborated. Both motions were denied by the trial court on the grounds that, as a matter of law, Grant was not an accomplice because he had acted under duress. Evans now asserts that these rulings were erroneous.

 An accomplice is " . . . one who in some manner, knowingly and with criminal intent aids, abets, assists, or participates in a criminal act."[26] To qualify as an accomplice a person need not commit every element of the offense with which the defendant is charged.[27] However, it is essential that he in some way " . . . associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." [28] Mere presence at the scene of the crime is not in itself enough to make out complicity.[29] Moreover, neither knowledge that a crime is being committed nor the concealment of that knowledge by itself makes a person an accomplice.[30] Complicity is established only if there is conduct voluntarily undertaken for the purpose of participating or assisting in the completion of a crime.

 By these standards it is clear that the facts adduced at Evans' first trial did not establish a case of complicity on the part of Larry Grant. Evans acted alone when he approached Grant and took possession of the contraband in question. According to Grant's testimony, Grant responded to Evans' actions in order to protect himself. There was certainly no evidence that Grant offered the narcotic to Evans or otherwise helped him gain possession of the contraband. Under these circumstances, the trial court's ruling that Grant was not an accomplice as a matter of law was correct.[31] On the other hand, if upon retrial Evans elicits evidence tending to prove that Grant played a more active role in Evans' crime, or if the evidence shows that Evans' *modus operandi* was to dispense drugs as a prelude to ap-

**26.** *Gordon v. State*, 533 P.2d 25, 29 (Alaska 1975); *Beavers v. State*, 492 P.2d 88, 97 (Alaska 1971); *Flores v. State*, 443 P.2d 73, 78 (Alaska 1968); *Taylor v. State*, 391 P.2d 950 (Alaska 1964); *Mahle v. State*, 371 P.2d 21, 25 (Alaska 1962).

**27.** *Gordon v. State*, 533 P.2d 25, 29 (Alaska 1975); *Anthony v. State*, 521 P.2d 486, 495 (Alaska 1974).

**28.** *Gordon v. State*, 533 P.2d 25, 29 (Alaska 1975), *quoting United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938).

**29.** *Fresneda v. State*, 458 P.2d 134, 144 (Alaska 1969).

**30.** *Daniels v. State*, 383 P.2d 323, 324 (Alaska 1963).

**31.** We find it unnecessary to reach the question of duress, which was the basis of the trial court's ruling, and express no opinion whether the facts of this case made out the legal defense of duress.

prehending the recipient of his largess for possession of those drugs, it would be proper to submit the issue of complicity to the jury.[32]

Evans next contends that this court should apply the "policies" of AS 12.45.020 and Criminal Rule 30(b)(2) [33] and order a judgment of acquittal where a conviction rests entirely upon the uncorroborated allegations of a member of a class of persons viewed with distrust. Both the statutory requirement of corroboration and Rule 30(b)(2) are limited by their terms to the testimony of an accomplice. Nonetheless, Evans argues a corroboration requirement should be imposed on the testimony of "addict informers", who are suspectible to a "special motive to lie".

■ *Howard v. State,* 496 P.2d 657 (Alaska 1972), largely dictates the conclusion that this argument should not be adopted. In *Howard* the contention that a corroboration requirement should be imposed on all witnesses addicted to heroin was rejected. Elsewhere this court has recognized that addict informers may have a special motive to fabricate testimony,[34] and for this reason extensive cross-examination as to bias should be allowed. However, where the informer is not in the status of accomplice, broad cross-examination and argument is sufficient to suggest to the jury the possibility of prevarication on the informer's part.

We therefore decline to extend the corroboration requirement to all addict informers or to extend the *Fresneda* requirement of a cautionary jury instruction regarding the testimony of certain informers.[35]

Evans submitted a proposed instruction which reads:

The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest, or by prejudice against defendant.

The superior court gave instead Instruction No. 8, reading:

The testimony of an informer or any witness whose self-interest or attitude is shown to be such as might tend to bring forth testimony unfavorable to the accused solely because of such self-interest or attitude, should always be considered with caution and weighed with great care.

Evans contends that it was error to give this instruction, inasmuch as, under his interpretation of its language, this instruction directed the jury to distrust Grant's testimony only if it found that Grant was motivated *solely* by self-interest.

---

32. *Flores v. State,* 443 P.2d 73, 80 (Alaska 1968).

33. Alaska R.Crim.P. 30(b) formerly provided in part:
> The court . . . shall give the following basic instructions on all proper occasions:
>
> . . . . .
>
> (2) That the testimony of an accomplice ought to be viewed with distrust and the oral admissions of a party with caution.

Subsequent to the filing of the briefs in this case, this provision was deleted from Rule 30 by amendment. Supreme Court of the State of Alaska, Order No. 222.

34. *Fields v. State,* 487 P.2d 831, 844–46 (Alaska 1971).

35. *In Fresneda v. State,* 483 P.2d 1011, 1015 (Alaska 1971), we stated:
> It would appear appropriate because of the known unreliability of certain types of accomplice and informer testimony to adopt in Alaska the requirement that the jury be instructed henceforth from the date of this opinion that the testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness.

Justice Erwin defined the prerequisites of this required instruction with some care, and we decline to expand the applicability of this instruction.

■ Counsel for Evans failed to object to Instruction No. 8 at trial and concedes as much in his brief. Normally this would preclude consideration of this point on appeal. Alaska Criminal Rule 30(a); *Avery v. State,* 514 P.2d 637, 643 (Alaska 1973). However, Evans urges this court to adopt a rule governing the *Fresneda* informer instruction analogous to that which governed the accomplice instruction formerly required by Alaska Criminal Rule 30(b). That instruction was mandatory, and thus the trial court erred if it failed to give the accomplice instruction regardless of whether trial counsel requested it or failed to object to the court's omission of it. *Anthony v. State,* 521 P.2d 486, 490 (Alaska 1974); *Beavers v. State,* 492 P.2d 88, 97 (Alaska 1971).

■ Evans overlooks, however, the fact that the mandatory nature of the accomplice instruction flowed from the very terms of Alaska Criminal Rule 30(b). The former terms of that provision expressly released the parties from any procedural obligation to assist the trial court in formulating the accomplice instruction or applying the law. *Anthony v. State,* 521 P.2d 486, 490 (Alaska 1974). Thus, Rule 30(b) created an exception when the accomplice instruction was involved to the requirement of Rule 30(a) that objections must be timely made to preserve the point for appeal. No similar exception covers the *Fresneda* informer instruction, and in the face of the express language of Rule 30(a) none should be created. Thus, Evans' failure to preserve this point on appeal precludes further consideration of this matter.

■ This court is, of course, at liberty to take notice of "(p)lain errors or defects affecting substantial rights . . . ."[36] However, the defect if any in Instruction No. 8 does not warrant notice in this case. To constitute "plain error" the defect must be both obvious and substantial. The giving of an incorrect instruction should be recognized as plain error only when necessary to prevent a miscarriage of justice. *Dimmick v. State,* 449 P.2d 774, 776 (Alaska 1969). The defect must have been obviously prejudicial. *Kugzruk v. State,* 436 P.2d 962, 964 (Alaska 1968). If it appears that failure to give defendant's proposed instruction did not contribute to the verdict, reversal is not required. *Thomas v. State,* 522 P.2d 528, 532 (Alaska 1974). In this case, we do not find persuasive Evans' proferred interpretation that Instruction No. 8 required the jury to conclude self-interest was Grant's sole motivation before it was to view his testimony with distrust. A more reasonable interpretation of the instruction was that the jury should view with caution Grant's testimony if it was shown that he harbored self-interest or an attitude which might of its own force tend to prompt unfavorable testimony. In other words, caution should be exercised if Evans demonstrated that Grant held a bias or self-interest likely to influence him. Read in this fashion, the instruction was eminently fair and reasonable.

■ Alaska recognizes entrapment as a defense to criminal charges.[37] In contrast with the rule prevailing in federal courts,[38] we have embraced the "objective" theory of entrapment, which holds that

. . . unlawful entrapment occurs when a public law enforcement official, or a person working in cooperation with him, in order to obtain evidence of the commission of an offense, induces another person to commit such an offense by persuasion or inducement which would be effective to persuade an average per-

---

36. Alaska R.Crim.P. 47(b).

37. *McKay v. State,* 489 P.2d 145, 149–50 (Alaska 1971); *Grossman v. State,* 457 P. 2d 226 (Alaska 1969).

38. *See Hampton v. United States,* —— U.S. ——, 96 S.Ct. 1646, 48 L.Ed.2d 113, 19 Crim. L.R. 3039 (1976); *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

son, other than one who is ready and willing, to commit such an offense. Conversely, instigations which would induce only a person engaged in an habitual course of unlawful conduct for gain or profit do not constitute entrapment.[39]

In the case at bar Evans urged below and in this appeal the adoption of a second, distinct rule of entrapment, the so-called *"Bueno* theory" of entrapment.[40] This doctrine has been limited in scope to contraband cases. It holds that when uncontroverted evidence establishes that one police agent provided the illicit drugs which defendant then illegally possessed or dispensed to a second agent, the defense of entrapment is made out as a matter of law. The rationale for this rule is clear:

> Frequently, it is permissible law enforcement practice for an undercover agent to obtain evidence of unlawful traffic in narcotics by purchasing heroin from a suspected drug peddler. But when the government's own agent has set the accused up in illicit activity by supplying him with narcotics and then introducing him to another government agent as a prospective buyer, the role of government

has passed the point of toleration. Moreover, such conduct does not facilitate discovery or suppression of ongoing illicit traffic in drugs. It serves no justifying social objective. Rather, it puts the law enforcement authorities in the position of creating new crime for the sake of bringing charges against a person they had persuaded to participate in wrongdoing.[41]

In recent years a number of federal [42] and state [43] courts have embraced the *Bueno* doctrine, including at least one jurisdiction which previously adopted the objective theory of entrapment.[44] However, subsequent to the arguments in the case at bar, the United States Supreme Court considered and rejected the *Bueno* variant of the defense of entrapment.[45] In two opinions a majority of five Justices reaffirmed the "subjective" theory of entrapment: in federal cases, entrapment can never be made out where the predisposition of the defendant to commit the crime is established, regardless of the degree of governmental misconduct in the case.[46] Nonetheless, a separate majority of five insisted that other defenses based on outrageous

39. *Grossman v. State*, 457 P.2d 226, 229 (Alaska 1969). *See also* Comment, Entrapment: An Objective Test for Alaska, 8 Alaska L.J. 224 (1970).

40. *United States v. Bueno*, 447 F.2d 903 (5th Cir. 1971).

41. *United States v. West*, 511 F.2d 1083, 1085 (3d Cir. 1975) (Hastie, J.).

42. *United States v. West*, 511 F.2d 1083 (3d Cir. 1975) ; *United States v. Mosley*, 496 F. 2d 1012 (5th Cir. 1974) ; *United States v. Oquendo*, 490 F.2d 161 (5th Cir. 1974) ; *United States v. Bueno*, 447 F.2d 903 (5th Cir. 1971) ; *United States v. Chisum*, 312 F. Supp. 1307 (D.Cal.1970) ; *United States v. Dillet*, 265 F.Supp. 980 (S.D.N.Y.1966).

43. *State v. Overmann*, 220 N.W.2d 914 (Iowa 1974) ; *Lynn v. State*, 505 P.2d 1337 (Okla. Cr.App.1973) ; *People v. Hanken*, 179 Colo. 70, 498 P.2d 1116 (1972) (dicta) ; *People v. Dollen*, 53 Ill.2d 280, 290 N.E.2d 879 (1972) ; *State v. Boccelli*, 105 Ariz. 495, 467 P.2d 740

(1970) ; *People v. Strong*, 21 Ill.2d 320, 172 N.E.2d 765 (1961). *Cf. State v. Golightly*, 495 S.W.2d 746 (Mo.App., Kan.Cty.Dist. 1973) (rejecting *Bueno*).

44. Iowa, which followed our *Grossman* opinion in *State v. Mullen*, 216 N.W.2d 375 (Iowa 1974), adopted the *Bueno* variant in *State v. Overmann*, 220 N.W.2d 914 (Iowa 1974). At least one jurist has noted that the *Bueno* defense is more compatible with a basic objective theory of entrapment than with the *Sorrells-Sherman* "subjective" rationale. *See United States v. West*, 511 F. 2d 1083, 1087 (3d Cir. 1975) (Weis, J., dissenting).

45. *Hampton v. United States*, —— U.S. ——, 96 S.Ct. 1646, 48 L.Ed.2d 113, 19 Crim.L.R. 3039 (1976).

46. *Id.* at ——, 96 S.Ct. 1646, 19 Crim.L.R. at 3040–41 (Rehnquist, J.) ; —— U.S. ——, 96 S.Ct. 1646, 19 Crim.L.R. at 3042 n. 2 (Powell, J.).

police tactics were still available.[47] Thus, when police activity goes beyond permissible limits, criminal prosecution may be barred, either in the exercise of the court's supervisory power over the federal judiciary, or because that activity transgressed principles of due process. Speaking for this majority, Justice Powell emphasized the obligation of federal courts to scrutinize law enforcement practices:

> [W]e should not disregard lightly Mr. Justice Frankfurter's view that there is a responsibility 'necessarily in [the Court's] keeping . . . to accommodate the dangers of overzealous law enforcement and civilized methods adequate to counter the ingenuity of modern criminals.'[48]

 In Alaska, it was expressly for the purpose of ensuring adequate supervision of law enforcement practices that we adopted the objective theory of entrapment.[49] Thus, the *Bueno* theory would appear quite compatible with the existing law of entrapment in this jurisdiction. However, we are of the opinion that,

even if expressly adopted, the *Bueno* variant of entrapment would be inapplicable to the case at bar.[50] The evidence presented in this matter does not present a case of government sponsored criminality, nor can it be said that the police wilfully sought to place in the hands of Evans the narcotics which were the basis of this indictment. On the contrary, the facts adduced demonstrate rather clearly that Grant acceded in Evans' taking of the narcotics for the best of motives, to preserve his cover in suspicious surroundings so as to proceed with his undercover investigative work. In this case Grant's actions or, rather his inaction, was apparently undertaken to " . . . facilitate discovery or suppression of ongoing illicit traffic in drugs." On the record before us it cannot be said that the government was engaged in the kind of criminal creativity which was properly condemned in *Bueno* and its progeny. Absent some further evidence on retrial suggesting that Grant instigated or in some fashion assisted Evans in taking possession of the contraband, the *Bueno* variant of the defense of entrapment properly has no place in this case.[51] We thus conclude that the trial

47. —— U.S. ——, 96 S.Ct. 1646, 19 Crim.L.R. at 3044 (Powell, J.) ; —— U.S. ——, 96 S. Ct. 1646, 19 CrimL.R. at 3043 (Brennan, J.).

48. —— U.S. ——, 96 S.Ct. 1646, 19 Crim.L.R. at 3042, *quoting Sherman v. United States*, 356 U.S. at 381, 78 S.Ct. 819.

49. "[U]nder standards of civilized justice, there must be some control on the kind of police conduct which can be permitted in the manufacture of crime." *Grossman v. State*, 457 P.2d 226, 230 (Alaska 1969).

50. We deem it immaterial that Evans was charged with possession of contraband rather than sale to a second government agent, as was the case in *Bueno*. With reference to the *Bueno* doctrine, a number of courts have spoken expansively of an illegal sale *or* possession brought on by entrapping tactics. *See United States v. Hampton*, 507 F.2d 832, 835 (8th Cir. 1974) ; *United States v. Oquendo*, 490 F.2d 161 (5th Cir. 1974) ; *People v. Strong*, 21 Ill.2d 320, 172 N.E.2d 765, 768 (1962).

51. Evans further contends that, assuming the *Bueno* defense of entrapment is available on

retrial, he should be allowed to carry that defense to the jury with appropriate instructions. This court in *Grossman v. State*, 457 P.2d 226, 230 (Alaska 1969), held that the court rather than the jury should decide the issue of entrapment, for the policy reasons expressed by Mr. Justice Frankfurter in his concurrences in *Sherman v. United States*, 356 U.S. 369, 378, 78 S.Ct. 819, 823, 2 L.Ed. 2d 848, 855 (1958), and *Masciale v. United States*, 356 U.S. 386, 389, 78 S.Ct. 827, 829, 2 L.Ed.2d 859, 861 (1958). Evans contends that this allocation of functions deprives him of the constitutional right to trial by jury. This claim is without merit. Notwithstanding the importance of the constitutional right, it is recognized that trial judges can and must be charged with the responsibility of deciding certain factual matters during the course of a trial without any derogation of the rights of the accused. It is the court's obligation to assess the legality of police conduct in certain respects, and to invoke exclusionary rules where necessary to deter impermissible police activities. *See, e. g., United States v. Anderson*, 394 F.2d 743 (2d Cir. 1969). The purpose of the defense of entrap-

court did not err in ruling that the evidence failed to show entrapment as a matter of law.

Out of the presence of the jury Evans' counsel proposed to ask George Pollard whether at the time of the transaction he was an undercover narcotics agent working for the federal government. Pollard's attorney advised his client to invoke the fifth amendment, which he did. The trial judge concurred, making no further inquiry into the basis of the claim or the relevance of the proposed questions to the claim. Evans now urges that the superior court's ready acceptance of the fifth amendment claim was in error.

We disagree, concluding that Pollard's refusal to respond was ultimately protected by his rights under the fifth amendment and Alaska's constitution. This court has recognized that the privilege against self-incrimination extends ". . . not only to answers that would in themselves support a conviction but also to those which might furnish 'a link in the chain of evidence' leading to a conviction." *McConkey v. State,* 504 P.2d 823, 826 (Alaska 1972). Prior to Evans' trial, Pollard had been indicted for the crime of unlawfully selling heroin to Grant. At the time of trial this count was still pending against Pollard. From the record it appears that the superior court was aware of the pending felony charges against Pollard and sustained the assertion of the privilege in light of this fact.

However, inasmuch as a new trial has been ordered we take this occasion to set forth some guidelines concerning the appropriate judicial response to the claim of privilege in this type of case. The Fifth Circuit has recently ruled that the trial judge should explore out of the presence of the jury whether the witness' fear

of self-incrimination is well founded. *United States v. Gomez-Rojas,* 507 F.2d 1213, 1219 (5th Cir. 1975), *citing Hoffman v. United States,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1957); *United States v. Waddell,* 507 F.2d 1226, 1228 (5th Cir. 1975). *See also McConkey v. State,* 504 P.2d 823, 824–25 (Alaska 1972). The privilege against self-incrimination is in constant conflict with the accused's right to present an effective defense. We reiterate that a trial judge should endeavor to accommodate those rights to the fullest extent possible and, in case like the one at bar, should explore the basic validity of the witness' claim out of the presence of the jury. *United States v. Anglada,* 524 F.2d 296, 300 (2d Cir. 1975).

Finally, Evans contends that the sentence hearing was defective insofar as certain inadmissible evidence was erroneously considered. At one point in the sentencing proceedings, the prosecutor questioned Evans concerning his most recent disorderly conduct charge, to which Evans had pled guilty. This charge and plea arose after the completion of the narcotics trial in question in this appeal but before sentencing. Counsel for Evans was unaware of the matter until it was raised at the sentence proceeding. Evans contends that consideration of this conviction by the sentencing court was error because the conviction was secured under the circumstances that appellant did not have the assistance of counsel. The state concedes that if the conviction was, in fact, obtained in the absence of counsel, its use for sentencing purposes would have been error. We agree the record does not fully reflect the circumstances surrounding this conviction. Inasmuch as a new trial is required, if a conviction on the heroin charge is again obtained, the superior court should

---

ment in this state is to deter law enforcement activities that go beyond the bounds of sound public policy.

In a case raising the defense of entrapment, a general jury verdict of "not guilty" would shed no light on the jury's assessment of the police conduct in that particular case, hence the purpose of the defense would not be served. Consequently, we reaffirm that the

defense of entrapment is a question for the judge rather than the jury. *See People v. Cushman,* 237 N.W.2d 228, 18 Crim.L.R. 2436 (Mich.App., 1976); *People v. Moran,* 1 Cal.3d 755, 83 Cal.Rptr. 411, 463 P.2d 763 (1970) (Traynor, C. J., dissenting); *Lynn v. State,* 505 P.2d 1337, 1344 (Okla.Cr.App. 1973).

refrain from considering this disorderly conduct conviction if it was secured in violation of Evans' right under Alaska's constitution to the assistance of counsel.

Evans also challenges the introduction of testimony of two police agents which tended to establish that in 1972 he was arrested for the sale of narcotics to an undercover agent. This police contact did not result in a conviction but was dismissed by the state. Evans contends that such testimony should have been excluded because its anticipated use had not been revealed to him and because it went to the kind of unresolved police contact condemned by this court in *Mattern v. State*, 500 P.2d 228, 235 (Alaska 1972), and earlier cases.

■ Whatever prejudice Evans suffered by his lack of preparedness to respond to this evidence could have been avoided had Evans moved for a continuance of the hearing. He cannot complain on that ground.[52]

■ It is true that this court has repeatedly cautioned that ". . . a court should not place undue weight on the defendant's prior police contacts during the sentencing process."[53] However, we have also approved judicial consideration of "verified information concerning additional crimes" which do not result in actual convictions, ". . . where the defendant is informed of the information and given an opportunity to explain or admit it."[54] More recently in *Burleson v. State*, 543 P. 2d 1195, 1203 (Alaska 1975), we commented on appellant's contention that the sentencing court placed improper reliance upon reference to police contacts which appeared in the presentence report. In rejecting this contention, we said:

> The incidents here referred to had some bearing on the crime committed, and Mr. Burleson had adequate opportunity to explain or deny the incidents. We are not presented with a case of unexplained police contacts or records of arrest.[55]

■ In the case at bar the superior court could properly consider the testimony of the two police agents regarding the purported 1972 transaction under the authority of *Burleson v. State, Adams v. State*,[56] and *Hixon v. State*.[57] Here there were apparently reliable witnesses who would testify, based on personal knowledge, to Evans' misconduct. Of particular significance is the fact that Evans was afforded the opportunity to cross-examine these witnesses and to rebut their testimony. Thus, the circumstances in the case at bar are distinguishable from unexplained police contacts where the ultimate disposition was not disclosed.[58]

Reversed and remanded for a new trial in conformity with the foregoing.[59]

BURKE, J., not participating.

---

52. Alaska R.Crim.P. 16(b)(1)(vi) was not violated because, assuming *arguendo* that the provision governs the sentence proceeding, it requires disclosure by the state only of defendant's conviction, not his arrests.

53. *Mattern v. State*, 500 P.2d 228, 235 (Alaska 1972) (footnote omitted); *Griggs v. State*, 494 P.2d 795 (Alaska 1972); *Robinson v. State*, 492 P.2d 106, 107 (Alaska 1971); *Peterson v. State*, 487 P.2d 682, 683 n. 1 (Alaska 1971); *Robinson v. State*, 484 P.2d 686, 690 n. 11 (Alaska 1971); *Waters v. State*, 483 P.2d 199, 202–03 (Alaska 1971).

54. *Hixon v. State*, 508 P.2d 526, n. 1 (Alaska 1973); *Adams v. State*, 521 P.2d 516, 517 (Alaska 1974).

55. The presentence report referred to an incident when Mr. Burleson apparently entered his former wife's home in violation of a restraining order, and a second instance when, immediately after the divorce, Mr. Burleson assaulted his former wife. Each incident was related in considerable detail in the presentence report.

56. 521 P.2d 516, 517 (Alaska 1974).

57. 508 P.2d 526, 527 n. 1 (Alaska 1973).

58. *See Peterson v. State*, 487 P.2d 682, 683 (Alaska 1971); *Robinson v. State*, 484 P.2d 686, 690 (Alaska 1971); *Waters v. State*, 483 P.2d 199, 202–03 (Alaska 1971).

59. Because of our disposition and the possibility that Evans will be resentenced, we do not at this time deem it appropriate to pass on the question of whether the sentence is excessive.