**Andrew WALKER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 6304.**

Court of Appeals of Alaska.

April 22, 1983.

Christine Schleuss, Asst. Public Defender and Dana Fabe, Public Defender, Anchorage, for appellant.

Elizabeth Page Kennedy, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

BRYNER, Chief Judge.

Following a jury trial, Andrew Walker was convicted of uttering a forged prescription in violation of former AS 17.10.170(e). Superior Court Judge Seaborn J. Buckalew, Jr., sentenced Walker to serve twenty years' imprisonment, with thirteen years suspended. Walker appeals his conviction, claiming that the trial court improperly restricted his cross-examination of the state's key witness; Walker also contends that his sentence is excessive.

On October 29, 1980, Walker entered Deb's Pharmacy in Palmer, Alaska, and presented the pharmacist, Richard Washburn, with a prescription for Dilaudid.[1] The prescription was made out to Jean Evans, SRB, Box 7339; it was ostensibly signed by Dr. John J. Smith. Washburn did not have the prescribed dosages of Dilaudid in stock, so he telephoned a Wasilla pharmacist, Arlo Swanson. Swanson became suspicious of the request and contacted Dr. Smith, who told him that he had not written the prescription. Swanson then called the Palmer police. Upon investigation it was ascertained that the prescription in Walker's possession was forged.

Richard Washburn testified as a witness for the prosecution at Walker's trial, providing the primary evidence that Walker uttered the forged prescription for Dilaudid. Walker now contends that his cross-examination of Washburn was unduly restricted by the court. He contends, specifically, that he was precluded from conducting effective cross-examination of Washburn in five areas: (1) whether Washburn had trained other individuals to forge prescriptions; (2) the nature of Washburn's

---

1. Dilaudid (hydromorphine hydrochloride) is a derivative of morphine. It is a narcotic analgesic; its principal therapeutic effect is relief of pain. Persons taking the drug may develop psychic dependence, physical dependence, and tolerance. Physician's Desk Reference (36th Ed. 1982).

connections with two individuals, Bidwell and Grasser, who were charged with unrelated kidnapping and drug offenses that involved Washburn;[2] (3) the details of Washburn's drug addiction since 1969; (4) the fact that Washburn was cut off from his drug supply in late October, 1980, and was forced to rely upon his access to drugs at the pharmacy; and (5) Washburn's knowledge of the fact that the prescription for Dilaudid was a forgery.

In discussing Walker's arguments on appeal, the parties agree that Walker's right to confront witnesses against him is guaranteed by both the federal and state constitutions,[3] that this right includes the right to effective cross-examination,[4] and that determining the proper scope of cross-examination is within the discretion of the trial court.[5] Walker insists, however, that the trial court abused its discretion by unduly restricting his cross-examination of Washburn.

The extent of cross-examination actually permitted by the court in the present case was not as meager as Walker makes it out to be. On cross-examination, Washburn admitted the following: (1) he had recently been on methadone as part of a drug detoxification program; (2) he had been given transactional and use immunity in return for his testimony in this case; (3) he used heroin during the fall of 1980; (4) his supply of heroin dried up around October 1980; (5) he was thousands of dollars in debt as a result of drug transactions; (6) approximately fifteen persons owed him twenty to thirty thousand dollars for drugs he sold on credit; (7) he had been caught by the owners of Deb's Pharmacy on more than one occasion stealing narcotics, and he was thus given only limited access to a safe in which the narcotics were kept; (8) he used other drugs such as Tylenol with codeine; (9) he consumed portions of bottled cough syrup, topped off the bottles with water, and sold them to the public; (10) he stole narcotics and syringes from the pharmacy; (11) he carried a gun because he was in fear of his life as a result of various drug transactions; and (12) he consumed some of the pharmacy's Dilaudid and substituted sugar pills. On redirect examination, Washburn specifically testified that he had never met Walker prior to the date of the alleged offense.

■ Considering the totality of Washburn's testimony on cross-examination, it appears that Walker's claims are frivolous as to at least two of the five areas in which he claims he was restricted on cross-examination. Washburn admitted that his supply of drugs dried up in late October 1980, and he admitted having stolen narcotics from the pharmacy. Furthermore, the thorough nature of cross-examination concerning Washburn's dealings with and addiction to narcotics at the time of the alleged offense clearly justifies exclusion of Washburn's entire history of drug use since 1969. See Braham v. State, 571 P.2d 631, 647 (Alaska 1977), cert. denied, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 410 (1978).

■ It was also proper to exclude Walker's proposed cross-examination concerning Washburn's connections with Bidwell and Grasser. To the extent that evidence that Walker had received immunity in Bidwell and Grasser's cases might have been relevant to show bias, it would have been cumulative given Washburn's testimony that he had been granted immunity to testify against Walker.[6] This line of inquiry

2. Washburn was granted immunity in exchange for his testimony against Bidwell and Grasser. The offenses for which Bidwell and Grasser were tried occurred after the date of Walker's offense. See Bidwell v. State, 656 P.2d 592 (Alaska App.1983).

3. U.S. Const., amend. VI; Alaska Const. art. 1, § 11.

4. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); Evans v. State, 550 P.2d 830 (Alaska 1976).

5. Davis v. Alaska, 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353.

6. Indeed, Washburn also stated on redirect examination that he had been granted immunity in the kidnapping case against Bidwell. Although defense counsel's objection to this testimony was sustained, it was not stricken from

was of dubious relevance for any other purpose, since Walker never asserted any connection between the circumstances involved in his case and Washburn's dealings with Bidwell and Grasser. We hold that the trial court did not abuse its discretion by refusing to allow cross-examination concerning Washburn's involvement with Bidwell and Grasser.

The final two areas of cross-examination in which Walker claims he was restricted pose a closer issue. Walker advances the theory that, had the jury been made aware of the fact that Washburn ran a "forgery school," in which he taught other individuals how to forge prescriptions, and had the jury been aware that Washburn knew that the prescription involved in this case was a forgery, it might have concluded that Walker was merely a "straw man" who had only been hired to receive the drugs once the prescription was filled. Walker suggests that Washburn's testimony was the only evidence at trial establishing the essential element of uttering on Walker's part, and he thus maintains that he should have been given great latitude in his attempt to discredit Washburn.

We are not convinced by this argument.

■■■ There was no connection whatsoever established at trial between Washburn and Walker. Walker's "straw man" theory was based on mere speculation; no offer of proof was made at trial, and there has been none on appeal, indicating that any connec-

tion between Washburn and Walker would have been established through cross-examination on the "forgery school." More significantly, a fair reading of the trial transcript leads to the conclusion that, on the date of the offense, Walker personally admitted uttering the forged prescription. Palmer Police Sergeant McKibben testified that he arrived at Deb's Pharmacy in uniform and approached Walker. He explained that he was investigating a forged prescription. According to McKibben, Walker said that he was picking up a prescription for his aunt, and he took the Dilaudid prescription out of his left shirt pocket and gave it to McKibben. Given Walker's failure to establish, either through evidence or by an offer of proof, the existence of some connection between himself and Washburn to support his "straw man" theory of defense, we are inclined to find that the trial court's restriction of cross-examination did not constitute an abuse of discretion. *See United States v. Bocra,* 623 F.2d 281, 288 (3rd Cir.1980); *Thomas v. State,* 522 P.2d 528, 533–34 (Alaska 1974). Even assuming that the court committed error, however, we conclude that, in light of the speculative nature of Walker's "straw man" theory and in light of Walker's on-the-scene admission concerning the forged prescription, any error was harmless.[7] We therefore uphold Walker's conviction.

■■■ We turn next to Walker's sentencing argument. We believe that our decision in

the record nor was the jury immediately instructed to disregard it.

7. Walker has also generally asserted that the trial court's restrictions on cross-examination prevented him from establishing Washburn's bias. Although defendants are normally afforded great latitude in cross-examination to establish bias, courts have drawn a distinction between cross-examination to show bias and cross-examination directed merely at impeaching a witness' general credibility. The accused's right to establish bias is greater than his right to impeach general credibility because the probative value of evidence of bias is considerably greater. *Evans v. State,* 550 P.2d 830, 837 (Alaska 1976); *Gonzales v. State,* 521 P.2d 512, 514–15 (Alaska 1974). *Compare R.L.R. v. State,* 487 P.2d 27 (Alaska 1971), with *Thomas v. State,* 522 P.2d 528 (Alaska 1974).

While Walker's proffered cross-examination might have tended to impeach Washburn's credibility in a general manner, Walker has failed to show how it would have established bias. The present case is readily distinguished from *R.L.R. v. State,* which is relied upon by Walker. In *R.L.R.,* 487 P.2d at 44, the supreme court held that failure to allow cross-examination as to the fact that a prosecution witness expected to be granted immunity was error because the witness' expectation of immunity would have established bias. Here, Washburn testified that he had in fact been granted immunity in return for testifying against Walker. It is not at all clear how a showing that Washburn had also been granted immunity as to Bidwell and Grasser would have tended to show bias against Walker.

*Stonefield v. State,* 635 P.2d 494 (Alaska App.1981), is highly relevant to the present case. Stonefield was convicted of uttering a forged prescription and attempting to obtain a narcotic drug by use of a false name. The two charges stemmed from attempts made by Stonefield on consecutive days to obtain medication in excess of the amount that had actually been prescribed to him. The trial court sentenced Stonefield to serve two concurrent eight-year terms, with three years suspended on each count. Stonefield was thirty years of age at the time of his conviction, he was on parole when he committed the offenses, and he had a lengthy criminal record, which included two prior felony convictions. 635 P.2d at 494–95. In *Stonefield,* we concluded:

> [W]e do not believe that the record justifies Stonefield receiving a sentence in excess of a total of five years. A sentence "ought not to exceed ten years except in unusual cases and normally should not exceed five years." Stonefield's current offenses basically involved an attempt to obtain drugs for his own use without any intent to sell. This would place him within the third category of offenses under the criteria set forth in *Waters v. State,* 483 P.2d 199, 201 (Alaska 1971).

635 P.2d at 496 (footnotes omitted).

Walker's criminal record is comparable to Stonefield's, except that Walker has spent considerably more time incarcerated than Stonefield. Stonefield's case may also be distinguished to some extent from Walker's because Stonefield had a relatively good employment history and had made progress in a drug rehabilitation program for four months before his sentencing. These considerations are offset to some extent by the fact that Stonefield was convicted of two offenses, while Walker was convicted of only one crime. Moreover, the sentencing judge in *Stonefield* expressly found that Stonefield's progress in drug abuse therapy did not deserve great weight in light of numerous prior failures in similar treatment programs. Under the circumstances,

we think that our holding in *Stonefield* is applicable in this case, and we conclude that Walker should receive, at most, a total sentence that does not exceed five years in length.

Reinforcing our conclusion is the fact that under Alaska's newly enacted drug bill the sentence that Walker received would be entirely inappropriate. Under the current statutory scheme, Walker could have been convicted of attempting to violate AS 11.71.040(a)(9), which provides that a person is guilty of misconduct involving a controlled substance in the fourth degree if he "obtains possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge . . . ." *See also* Commentary and Sectional Analysis for the 1982 Revision of Alaska's Controlled Substances Laws, at 21. Fourth-degree misconduct involving a controlled substance is a class C felony under AS 11.71.040(d), and, since Walker could be convicted only for attempt, his conviction would carry the maximum sentence of a class A misdemeanor. *See* AS 11.31.100(d)(4).

■ This newly enacted drug legislation is a relevant factor in determining the sentence that Walker should receive upon remand. *Wright v. State,* 651 P.2d 846, 849 (Alaska App.1982). By holding that Walker may be given a sentence of up to five years on remand, we recognize that his prior criminal record and his long history of drug abuse may be deemed by the sentencing court to constitute exceptional circumstances, which would warrant the imposition of a term exceeding that which Walker could receive under the current law.[8] Nevertheless, we believe that, in imposing sentence on remand, the court should give careful consideration to the newly adopted drug bill, which constitutes the most recent expression of policy by our legislature concerning the seriousness of the conduct for which Walker was convicted.

Walker's conviction is AFFIRMED. The sentence entered below is VACATED and this case is REMANDED for resentencing

---

8. *See, e.g., Sundberg v. State,* 652 P.2d 113 (Alaska App.1982).

in conformity with the provisions of this decision.